## Mississippi Oil Company v. Sarah J. Smith et al.

### [48 South. 735.]

1. Wrongful Death of Person. *Suit for. Damages. Element of. Expectancy of decedent's life. Pleadings. Evidence. Failure to object. Instruction. Harmless error.*

   In an action for the wrongful killing by defendant of a son of one of the plaintiffs and the brother of the others, the value of the decedent's life expectancy is a recoverable element when claimed in the declaration; and where not so claimed the admission of testimony on the subject will not constitute reversible error if no objection were made thereto in the trial court, and defendant obtained an instruction authorizing the jury to consider it, if they found for the plaintiff, in awarding damages.

2. Same. *Mother's right to prospective earnings of deceased minor son. When not entitled to.*

   A mother suing for the wrongful death of her infant son cannot recover the value of his earnings between his death and the time when he would have reached majority, in the absence of evidence as to her age, health, constitution or expectancy of life.

3. Same. *Mortuary tables. When not admissible in evidence.*

   Mortuary tables are not admitted in evidence in an action for the wrongful death of a person, where deceased was an asthmatic, and persons suffering with asthma were excluded from the classes considered in the making of such tables.

4. SAME. *Burden of proof. What plaintiff must show.*

Plaintiff suing for the wrongful death of another must not only show his relationship to the party and that the person for whose death the suit is brought was killed by the defendant, but must further show how he was killed and that his death was due to defendant's negligence or wilful wrong.

5. SAME. *Employer. Employe. Master and servant. Infant servant. Instructions. Servant's comprehension of.*

In an action for the death of a minor employe, it was improper to instruct that an employer must see that an employe comprehends instructions given, where decedent was fifteen years old and of average intelligence, and there was no showing that he did not fully comprehend all instructions given.

6. EVIDENCE. *Allegata and probata. Variance. Failure to object. Harmless error.*

The variance between an allegation that injury occurred in one room of a mill and proof that it occurred in another room was immaterial, where it does not appear that defendant was prejudiced thereby, and the evidence was not specifically objected to.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Mrs. Smith and others, appellees, were plaintiffs in the court below; the Mississippi Cotton Oil Company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Green & Green* for appellant.

Counsel argued the case fully in their brief, citing the following authorities:—

*Solomon v. Compress Co.,* 69 Miss. 326, 10 South. 446, 12 South. 339; *Miller v. Wesson,* 58 Miss. 834; *Railroad Co. v. Davis,* 91 Ala. 496; *Railway Co. v. Hirsch,* 69 Miss. 135, 13 South. 244; *Railroad Co. v. Miller,* 51 Tex. 274; *Buckley v. G. P. & R. M. Co.,* 113 N. Y. 540; *Crowley v. Mills,* 148 Mass. 230; *Ash v. Verlenden Bros.,* 154 Pa. St. 249; *Ciriack v. Woolen Co.,* 151 Mass. 156; *Borch v. Nut Works,* 69 N. W.

254; *Ogley v. Miles,* 139 N. Y. 458; *Lowcock v. Paper Co.,* 169 Mass. 313; *Groth v. Thomann,* 110 Wis. 488; *Marsden v. Johnson,* 89 Ill. App. 102; *Natchez Co. v. McLain,* 33 South. 723; *Nonforton v. Brick Co.,* 113 Mich. 39; *Coke Co. v. Timilson,* 51 S. E. 362; *Bender v. Glucose Co.,* 61 Atl. 389; *Wencr v. Trautwein,* 61 S. W. 447; *Oszkoscil v. Pencil Co.,* 6 N. Y. Supp. 502; *Bibb v. Taylor,* 95 Ga. 615; *Probert v. Phipps,* 149 Mass. 258; *Langlois v. Worsted Mills,* 57 Atl. 910; *Becham v. Miller,* 47 N. J. L. 14; *Railroad Co. v. Cathey,* 70 Miss. 237, 12 South. 253; *Cudahy v. Marcan,* 106 Fed. 647; *Railway Co. v. Dixon,* 139 Fed. 737; *Moore v. Johnson,* 103 Va. 88; *Goraussow v. Manufacturing Co.,* 186 Mo. 300; *Dobson v. State,* 67 Miss. 330, 7 South. 327; *Railroad Co. v. Humphrey,* 83 Miss. 739, 36 South. 154; 2 Labatt on Master & Servant, sec. 833; *Fuller v. Ann Arbor R. Co.,* 104 N. W. 414; *Grant v. Railroad Co.,* 133 N. Y. 657; *Goranson v. Manufacturing Co.,* 186 Mo. 300; *Vicksburg v. Hennesey,* 54 Miss. 391; *Fisk v. Railroad Co.,* 72 Cal. 38; *Michael v. Henry,* 58 Atl. 125; *Nudd v. Insurance Co.,* 25 Minn. 100; *Shadoan v. Railroad Co.,* 82 S. W. 567; *Prentiss v. Furniture Co.,* 63 Mich. 482; *Leislrilz v. Zylonite Co.,* 28 N. E. 294; *Railway Co. v. Skinner,* 4 Tex. Civ. App. 661, 23 S. W. 1001; *Railroad Co. v. Dial,* 58 Ark. 323; *Railroad Co. v. Miller,* 51 Tex. 274; *Youll v. Railroad Co.,* 66 Ia. 348, 349; *Downey v. Sawyer,* 157 Mass. 418; *O'Keefe v. Thorn,* 16 Atl. 737; *Ertz v. Pierson,* 130 Mich. 163; *Buttle v. Box Co.,* 175 Mass. 318; *McCann v. Mathison,* 133 N. Y. 263; *White v. Lithographic Co.,* 131 N. Y. 631, 30 N. E. 236; *Hickey v. Taffe,* 105 N. Y. 26, 12 N. E. 286; *Hettchen v. Chipman,* 87 Md. 732; *Mueller v. Shoe Co.,* 84 S. W. 1010; *Colb v. Chicago,* 33 Ill. App. 488; *Engine Works v. Randall,* 100 Ind. 293, 298, 300; *O'Maley v. Light Co.,* 158 Mass. 135, 32 N. E. 1119; *Nugent v. Kauffman,* 33 S. W. 428; *Thrasher v. Loring,* 2 Smed. & M. 149; *McCue v. Stratch Co.,* 142 N. Y. 106; *Jones v. Coal Co.,* 211 Pa. 577, 578; 4 Thom. Neg. 4095; *Diehl v. Oil Co.,* 57 Atl. 131;

11 Ency. Pl. & Pr. 137; *Railroad Co. v. Mitchell,* 52 Miss. 808; *French v. Sales,* 63 Miss. 386; *Myrick v. Wells,* 52 Miss. 149; *Prine v. State,* 73 Miss. 842, 19 South. 711; *Haverly v. Railroad Co.,* 19 Atl. 1014; *Railroad Co. v. McGowan,* 62 Miss. 695; *Hasie v. Railway Co.,* 78 Miss. 417, 28 South. 941; *Levy v. Holberg,* 71 Miss. 66, 14 South. 537; *Rippey v. Miller,* 62 Am. Dec. 178; *Moulton v. Gibbs,* 105 Ill. App. 104; *Railroad Co. v. Overstreet,* 85 Miss. 85, 37 South. 819; *Railroad Co. v. Whitfield,* 44 Miss. 499; *Kutchera v. Goodwillie,* 93 Wis. 448; *Bagnowski v. Linderman,* 93 Wis. 592; *Dunlap v. Heam,* 37 Miss. 471; *Dougherty v. Vanderpool,* 35 Miss. 165; 11 Ency. Pl. & Pr. 116; *Railroad Co. v. White,* 82 Miss. 471, 34 South. 331; 15 Am. & Eng. Ency. Law, p. 881; *Railroad Co. v. Crudup,* 63 Miss. 303; *Telephone Co. v. Anderson,* 89 Miss. 745, 41 South. 263; *Colbert v. Railroad Co.,* 67 Atl. 446; *Railway Co. v. Berry,* 102 S. W. 89; *Foster v. Railroad Co.,* 72 Miss. 886; *Kamerick v. Castleman,* 21 Mo. App. 587; *Bernheim v. Dibrell,* 66 Miss. 202; *Smith v. Team,* 16 South. 492; *Fetuson v. Brown,* 75 Miss. 224; *Bulliner v. People,* 95 Ill. 394; *Robinson v. Craig,* 17 Ala. 51; *McDonald Iron & Steel Co.,* 103 N. W. 833; *Crammond v. International Paper Co.,* 101 N. Y. S. 363; *Riley v. Rapid Transit Co.,* 10 Utah, 430; *Johnson v. Railroad Co.,* 64 Wis. 425; *Post v. Olmstead,* 47 Neb. 893; *Chicago v. Kimball,* 18 Ill. App. 240; *Railroad Co. v. Watson,* 78 S. W. 176; *Railroad Co. v. Ebert,* 74 Ill. 399; *Telephone Co. v. Anderson,* 89 Miss. 743, 41 South. 263; *Perkins v. Guy,* 55 Miss. 182; *Cavanah v. State,* 56 Miss. 308; *Martin v. State,* 63 Miss. 508; *Cross v. State,* 68 Ala. 476; *Wolfe v. Minnis,* 74 Ala. 386; Proffatt on Jury Trials, § 250; *Railway Co. v. Beezley,* 101 S. W. 1051; *Loughlin v. Brassil,* 187 N. Y. 135; *Johnson v. McNiff,* 113 Ill. App. 2.

*G. Q. Hall, Hall & Jacobson,* for appellee.

Counsel argued the case fully in their brief, citing the fol-

lowing authorities:—*Highland Avenue, etc., R. Co. Dusen-berry,* 98 Ala. 239, 10 South. 274; *Maupay v. Holley,* 3 Ala. 103; 16 Cyc. 872; *Atlanta Cotton Factory v. Speer,* 47 Am. Rep. 750; *Yazoo, etc., R. Co. v. Slaughter,* 45 South. 873; *Telephone Co. v. Anderson,* 89 Miss. 732, 41 South. 263; *Rummell v. Dillsworth Porter & Co.,* 19 Atl. 345; *Brazill Black Co. v. Gaffney,* 4 L. R. A. 850; *Marbury L. Co. v. Westbrook,* 35 South. 914; *Adams v. Bunker Hill,* 11 L. R. A. (N. S.) 844; *Schum v. Pennsylvania R. Co.,* 107 Pa. St. 8; *Pennsylvania R. Co. v. Weber,* 76 Pa. St. 157; *Savage v. R. I. Company,* 67 Atl. 633; 3 Wigmore on Evidence, sec. 1698; *Pittsburgh C. C. & St. L. R. Co. v. Lightseiser,* 78 N. E. 1033; *Illinois, etc., R. Co. v. Hutchins,* 89 S. W. 530; *Reynolds v. Narragansett, etc., Co.,* 59 Atl. 393; *Central Railroad Co. v. Richards,* 62 Ga. 307; *Richmond & Danville R. Co. v. Garner,* 91 Ga. 27; *Columbus v. Sims,* 94 Ga. 483; *Railroad Co. v. Putman,* 118 U. S. 545; *Coates v. Burlington, etc., R. Co.,* 62 Iowa, 486; *Atlanta, etc., R. Co. v. Beauchamp,* 93 Ga. 6, 19 S. E. 24; *Cartwright v. State,* 71 Miss. 85, 14 South. 526; *Yazoo, etc., R. Co. v. Rivers,* 46 South. 75; *Sartorious v. State,* 24 Miss. 602; *Taylor v. State,* 30 South. 657; *Mitchell v. McGee & Alford; Crow v. Burgin,* 38 South. 625; *Noden v. Verlender Bros.,* 3 Am. & Eng. Ann. Cas. 367; *Rose v. Railway Co.,* 70 Miss. 725, 12 South. 825; *Jones v. Edwards,* 57 Miss. 28; *Hewlett v. Ragsdale,* 68 Miss. 703, 9 South. 885; *Railroad Co. v. Chastine,* 54 Miss. 503; *Express Co. v. Brown,* 67 Miss. 260, 7 South. 318; *Lagrone v. Railroad Co.,* 67 Miss. 592, 7 South. 432; *Schofield v. Smelting Co.,* 50 L. R. A. 417; *Taylor v. Braddord,* 83 Miss. 157, 36 South. 423.

Argued orally by *Garner W. Green,* for appellant, and by *G. Q. Hall,* for appellee.

Whitfield, C. J., delivered the opinion of the court.

This is an action brought by the plaintiffs, Mrs. Smith,

mother, and her four children, minors, for damages result-
ing from the killing by the appellant of Willie Mack Smith,
the son of the mother, and brother of the minors. The decedent
was caught and crushed in the machinery of the appellant,
and died some twenty-four hours later, after enduring mani-
festly very great physical and mental agony. There was a
judgment in the court below for $10,000 damages, from which
this appeal was prosecuted.

Going at once to the vital points in the case, we first take up
the alleged error in the admission of the mortuary tables. It
will be necessary to deal with this assignment of error in two
aspects: First, as regards the pleadings; and, second, as regards
the evidence.

First, then, as to the pleadings, the declaration has six counts.
Each of these counts closes with specifically enumerated ele-
ments of damage, all of which are practically alike, being sub-
stantially as follows: "For which pain, suffering, and anguish,
mental and physical, and the loss to plaintiffs of his services,
support, society, and protection, and the expenses of his last
illness and burial," etc., the said plaintiffs sued. It is manifest
that there is no specific express claim, therefore, in the declara-
tion, for the recovery of damages, for the present value of the
life expectancy of the deceased. This was a perfectly proper
element to have been specifically claimed in the declaration.
*Telephone Co. v. Anderson,* 89 Miss. 743, 41 South. 263. It
may be correct to say that if the declaration had not specifically
enumerated the elements of damage, but had simply declared
for damages generally in a certain amount, the plaintiffs could
have recovered all the damages named in section 721, Code of
1906; that is to say, all damages of every kind to the decedent,
and all damages of every kind to any and all parties interested
in the suit. We think that is a correct proposition. Whether,
when the plaintiffs choose specifically to enumerate the elements
of damage in this suit, they are to be limited to those elements
only, as a matter of pleading alone, it is not in this case neces-
sary to decide; for in this case the defendant made no objection

to the testimony of Cameron, or to the introduction of the mortuary tables, based upon the ground that the declaration had not claimed this element of damages, the present value of the deceased's life expectancy, but, on the contrary, actually asked and obtained an instruction (No. 9), telling the jury they might award, if they found for the plaintiffs, such damages—that is to say, all such damages "as were shown to have been caused by the death of said Smith"—which charge is broad enough to cover this very element of damages.  In view of this course on the part of defendant, in respect to testimony and its said charge, it cannot be held in this case that on the pleading alone the plaintiffs could not claim to recover this element of damages.    On the pleadings, therefore, the objection is untenable in the case made by this record.

Turning, now, to the aspect of this assignment of error as regards the testimony, it is to be observed that the court admitted the mortuary tables in evidence, although the testimony clearly showed the decedent to be an asthmatic, and Cameron, the plaintiff's witness, expressly testified that, being an asthmatic, he was not in the class embraced by the mortuary tables. It was expressly held in the case of *Railroad v. White,* 82 Miss. 471, 34 South. 331, that these mortuary tables only show the probable age which a sound and healthy person belonging to the class may expect to reach whose age is given, and that it would be error to permit the introduction of mortuary tables to show the life expectancy of one not within the class of persons for whom such tables are prepared.   The same doctrine is laid down in *Telephone Company v. Anderson,* 89 Miss. 745, 41 South. 263, and *Railroad v. Crudup,* 63 Miss. 303, and is well settled.   It was, therefore, manifest error to allow the introduction of the mortuary tables.

Another manifest error was committed in allowing the plaintiffs to recover the supposed value of the services or earnings of the decedent for the six years between the time of his death, when he was in his fifteenth year, and majority, so far as his

mother was concerned, for the reason that there is not a particle
of proof in the record about the age of the mother, or her health
or constitution, or anything affecting the probable length of
her life.  Nor is there any evidence on these subjects as regards
the minors, save only as to their ages.  It was held in the
*Crudup case, supra,* that it is the expectancy of the one who
would die soonest which must control, as, for example, here,
between the mother and the son, so far as her right to recovery
for his services is concerned.  There could not, therefore, on
the testimony in this record, under the authority of the three
cases cited, the *Crudup csae,* the *White case,* and the *Anderson
case, supra,* be any recovery for the earnings for these six years,
as to the mother at least.  To charge the jury, therefore, that
she might recover for this element of damage, in the absence
of any proof as to her age and health, constitution, etc., was
manifestly error.  And, under the authority of the cases to
which we have just referred, these two errors we have thus far
dealt with are reversible errors.  It is impossible to say, with
the mortuary tables in, and an expectancy on the part of the
deceased of forty-five years of life to come, how much of the
$10,000 the jury allowed for such expectancy thus erroneously
proven; and it is also impossible to say how much the jury
meant to award to the mother for the value of the earnings of
her son for the said six years.

We turn, now, to the only other inquiry, vital in the case,
which we think we ought to notice on the present appeal.  It
is very earnestly argued that a peremptory instruction should
have been given for the defendant.  We cannot concur in this
view, after a most careful and scrutinizing examination of the
testimony.  The fair deduction from all testimony makes out
this case: That this decedent was in his fifteenth year when
killed; that he was employed by Emerson under the specific
contract that he should pick up the grabbolls and sweep and
dust out the room where he was to stay in the mill, and sack up
hulls; that he did not actually do this work alone, but, in ad-

dition to this, was put in exclusive charge of the room in which he was killed, in which there was extensive machinery of the most complicated and dangerous character, and was directed by Emerson, as well as by Cotton, to apply to the belting a certain paste, the chief object of which was to keep the bands from sliding off the pulleys; that this he was required to do several times during the day; that it was a very dangerous thing to do this in the way in which alone he could do it, by ascending a little stairway to a platform, twenty-four by fourteen inches, climbing, as one of the witnesses expresses it, "like a squirrel would" up there; that he was never instructed by Emerson, who employed him, and had the right to employ him, as to the danger of applying this paste to the belting; that he was actually killed whilst engaged in the application of this paste to the belting, in this way, to wit: That he went up on this stairway to this little platform, twenty-four by fourteen inches, first applied the paste to the belting, and then swept up and dusted up, and then started to go down the stairs, but observing the little belt was still working off, again stopped to apply the paste to the little belt, and whilst he was engaged in applying the paste to this little belt the second time he either slipped or fell over towards the cogwheels and was caught in the machinery and killed. This is the substantial case made out by competent evidence, as it went to the jury. We have said the fair inference is that Emerson directed him, on one occasion, to apply this belt paste. This is based upon the testimony of the young brother of the decedent, and we think the jury were warranted in deducing that inference; but, besides this, in Ike Gandy's testimony, it is stated as follows, "They [that is, Cotton and Emerson] told him about those wheels up above the machinery there, to keep them greased." It was, therefore, a fair inference from the testimony, if the jury believed it, that Emerson did tell this boy to apply this paste. It may be scant testimony. It is in direct conflict with Emerson's testimony; but all that was committed to the jury for their decision.

It is most earnestly and forcibly argued, under the authority of many cases set out in the very learned brief of the counsel for the appellant, that it is the duty of the plaintiff, not only to prove an injury, but to show by the testimony how the injury occurred, and in so doing to show that it was due to negligence of the defendant. This is undoubted law; but we think that the testimony in this case, which we have just above set out, does tend sufficiently to show, if the jury accepted it as true, just how the decedent came to his death—that it was by reason of negligence of the defendant in placing this young and inexperienced boy, who knew nothing about machinery, in exclusive charge of all this complicated machinery, directing him to apply this belt paste just when and where he did, and all this without proper instruction as to how it should be applied and the danger attending its application. Counsel for appellant pressed too far certain parts of the testimony of Ike Gandy. It is true that Ike Gandy testified, in answer to questions on cross-examination, as follows: "Q. You saw him. He was putting dressing on. You say he was through that? A. Yes, sir. Q. And when he got through he turned around and started to go down, he slipped and fell, and he put his arm around the post when he slipped and fell, and when he did that the cogwheels caught hold of the sleeve of the jumper? A. Yes, sir." But all this he makes much clearer in his previous testimony, where he testifies as follows: "Q. He went up there to dress that belt? A. Yes, sir; he was sweeping around up there after he got through dressing, and he got through sweeping, and he was fixing to come down, and he was dressing the belt as he come down. . . . Q. He was up there dusting around, and, after he got through brushing the things up, then he put this little belt dressing on? A. Yes, sir; because that little thing kept coming off." In other words, the fair inference from his testimony is that he was in the act of applying this dressing when he fell over and was caught and crushed in this machinery. It is not, therefore, to be assumed

from the testimony that, after he had completed the dressing and had turned to come down, he slipped and fell whilst merely coming down, and so the injury might have been called an accident. Whether this was so—that is to say, whether it was an accident—was a fact for the jury to determine; and the learned counsel for the defendant recognized this in the court below, by asking and obtaining charge No. 2, which is in the following words: "The court charges the jury, for the defendant, that if they believe from the testimony that Willie Mack Smith had ascended the stairway and greased the belt, and turned after greasing said belt, and his foot slipped and he fell down the steps, catching his arms around a post, and that in this attitude his arm was caught in the machinery and bruised or mashed, and that he was otherwise injured, and, from such injuries died, then the jury should find for the defendant." Under this charge, on this evidence, it is manifest that the jury did not believe that the injury was an accident, or that it occurred as set out in this charge; and on this testimony they might rightly have believed that it was not an accident, for it occurred whilst he was in the very act of applying this belt paste, stopping on his way down to apply it.

In respect to appellee's fourth instruction, it would be safer to leave off the last clause, to the effect that the employer should see to it that the employe comprehends the instructions given. If there may be circumstances, as to which we do not now decide, in some peculiar case, warranting this clause, we think it would be safer on the new trial to omit this clause from this instruction. The boy here, whilst only in his fifteenth year, was a boy of fully average brightness and intelligence, and there is no evidence in the record whatever that he did not fully comprehend all the instructions that actually were given to him. For these reasons this clause should be omitted from this instruction. The rest of the instruction is unobjectionable. Nor do we think there was any error in the third instruction for the appellees.

Very much is said in the objections to the different counts in the declaration as to the allegation of the injury having occurred in the linter room, etc., when in fact and in truth it occured in another room. We think all this immaterial as to the very right of this cause, even on this trial. Grant that there was a misallegation in this respect; it is not at all clear, from this record, that this defendant sustained any injury by reason alone of this misallegation in the declaration as to the mere name of the room in which the injury occurred. The room was to be identified, not merely by name, but by the other descriptive matter in the count, and it was sufficiently identified. The evidence abundantly showed the exact room in which the injury did occur. There was no special objection made at the time the testimony was being detailed on this particular ground, nor any other exception, save in the general motion, to exclude all the evidence. Manifestly the defendant sustained no prejudice, arising out of the course of the trial in this matter.

We will notice very briefly the peremptory charges asked with respect to each of the six counts. We dispose of them all by saying, for the purposes of the next trial, that this request for peremptory charges should have been overruled as to all the counts except the fifth, and as to that it should have been sustained; or, what would have been better, that count should have been stricken from the declaration. But all this matter about the framing of a declaration can be attended to by proper amendment of the declaration on another trial.

There is no merit in the objection to the first instruction granted to the appellee. The necessity of the failure to warn, being the proximate cause of the injury, is fully set out in the charges elsewhere and the defendant's rights fully protected by a number of charges, most skillfully framed.

It would protract this opinion to an unpardonable length to attempt even to treat seriatim the numerous assignments of error. We have dealt with what we consider the vital points in the case, and we do not desire to be understood as having

passed upon any assignments except those specifically mentioned by us.   On the case as made by the testimony in the present record, we are clearly of the opinion that the plaintiff's cause is a meritorious one, and, but for the very serious errors committed by the court below, herein pointed out, we would affirm the judgment without hesitation.

*Reversed and remanded.*