AVERY *v.* COLLINS.

(Division B. Nov. 19, 1934.)

[157 So. 695. No. 31420.]

638

(Division B.  Jan. 14, 1935.)

[158 So. 552.  No. 31420.]

For former opinion, see 157 So. 695.

**Brandon & Brandon**, of Natchez, for appellant.

640

**Engle & Laub,** of Natchez, for appellee.

Argued orally by **Gerard Brandon**, for appellant, and by **S. B. Laub**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee, as administratrix, sued for the death of her minor son, caused by the alleged negligence of the defendant as the owner and driver of an automobile upon a public highway. There was a verdict and judgment for the plaintiff for seven thousand five hundred dollars.

Upon the issue of liability, appellant complains that the verdict is against the overwhelming weight of the evidence. The proof introduced by the plaintiff, leaving aside that for the defendant, is amply sufficient to sustain the verdict on liability; but we are of the opinion that the evidence of the defendant himself and that of his other witnesses and those facts which are undisputed, when taken together, are sufficient to impose liability. The facts, in brief, accepting defendant's own version, as qualified by his several witnesses who were with him in the automobile, are as follows: Appellant was driving westwardly on public highway No. 22, in Adams county, in the unincorporated settlement called Cranfield. At this point, the highway crosses the railroad, and thence proceeds westwardly alongside the railroad upon level and open ground. After appellant had crossed the railroad and had reached a point about fifty feet beyond and west of the crossing, he saw the deceased, a negro boy thirteen years of age, about one hundred fifty to one hundred seventy-five feet further west walking in the road, and about four feet from his right-hand side of the gravelled roadway, which was about eighteen

feet wide. Deceased was walking westwardly, with his back to the approaching automobile, and was unaware of its approach. Upon seeing deceased so situated, appellant sounded his horn, and thereupon, observing that the deceased paid no attention and was still apparently unaware of the approach of the automobile, appellant turned to the left, and proceeded at an undiminished speed of about thirty miles an hour, with the expectation, as appellant says, of passing on the left-hand side of the road and to the left of deceased in the road. When the automobile traveling at the undiminished speed of about thirty miles an hour, and running then on the left-hand side of the road, reached a point about twenty feet from the deceased, the latter for the first time became aware of the automobile, and instantly jumped to his left, and into the path which the automobile was then pursuing, and was so severely injured that he was rendered unconscious and died soon thereafter without regaining consciousness.

It is the law of the road in this state that automobiles shall be driven on their right-hand side of the road or street; the only exceptions being when necessary to pass inanimate or insensate obstructions, or when overtaking any horse, draft animal, or other vehicle, or in rare and limited cases of sudden emergency. The law, section 5574, Code 1930, requires that pedestrians shall walk on their left-hand side of the road, so as to face approaching vehicles, which, being entitled to their right-hand side, would thus approach facing a pedestrian who is on his left-hand side. But the law does not authorize automobiles to turn to their left-hand side of the road to pass pedestrians who are on the pedestrian's right-hand side; the cases in which automobiles may turn to the left being stated in the opening sentence of this paragraph.

When, therefore, the driver of an automobile sees a pedestrian walking in the road on the pedestrian's right-

hand side, and with his back to the automobile, and thus upon the side which the automobile is entitled to hold, it is the duty of the driver of the automobile to "give or cause to be given, reasonable warning of its approach, and use every reasonable precaution to insure the safety of such person." Section 5572, Code 1930. Or as said in Ulmer v. Pistole, 115 Miss. 485, 492, 76 So. 522, 524, "the driver of an automobile must keep his machine constantly under control; he must continue on the alert for pedestrians and others using the streets (and roads), and must anticipate their presence;" and this entails the further requirement that the driver must be alert not to injure a pedestrian whose presence is, or should have been, discovered.

We have often heretofore stated in the written opinions of this court that automobiles have become of such general use and form so largely a part of the daily lives and experiences of our people that judicial knowledge may be taken of those prominent facts in respect to them or their operation which are a part of the common knowledge of every person of ordinary understanding and observation. We may accordingly take notice of the fact that it is common observation in the operation of automobiles that the requirement of the statute that pedestrians shall walk on their left-hand side of the road has not yet been translated into a common practice of the people, and that frequently pedestrians are found walking on their right-hand side, as was formerly the legal custom; but that, when so walking on their right-hand side and an automobile horn is sounded or they otherwise become aware of the approach of an automobile behind them, they often, and nearly always when there is a ditch on the right-hand side, quickly step or jump to their left in response to the instant impulse or reaction that the car is approaching on its right-hand side, and that is exactly what happened in this case, and

what the driver as a reasonably prudent person should have anticipated would happen.

It was the duty of the driver of the automobile in this case to keep to his right. As soon as he observed the pedestrian walking on that side, with his back to the automobile, it was the duty of the driver to sound his horn, and to continue at short and frequent intervals to sound the horn until he observed that the pedestrian had become aware of the approach of the automobile. And, when it was observed that the pedestrian continued unaware, it was the duty of the driver to apply his brakes and to slow down, and to come to a stop, if necessary, before the pedestrian was reached. There was adequate time and opportunity within the one hundred fifty to one hundred seventy-five feet mentioned for the driver to have met all the requirements above stated and thus to have avoided the injury or rendered it improbable, and no case of sudden emergency is presented by the facts. The stated measure of duty has been applied even as to railroads and in favor of trespassers on their tracks, as, for instance, in Yazoo & M. V. Railroad Co. v. Lee, 148 Miss. 809, 114 So. 866. The driver of the automobile fell far short of that duty in this case, as his own testimony and that of his witnesses disclose and beyond room for sustainable argument to the contrary.

The verdict and judgment will be affirmed as to liability, but it must be reversed on the amount of the damages. The record is in a peculiar shape upon that subject, as will be at once observed from what we shall now state, in doing which we leave aside punitive damages which are not in issue here, and also the item of funeral expenses in regard to which decision was pretermitted in Yazoo & M. V. Railroad Co. v. Barringer, 138 Miss. 296, 304, 103 So. 86, and will be here because not briefed on the point.

The following general instruction was granted by the

court at the request of plaintiff: "The court instructs the jury for the plaintiff that if you find for the plaintiff it will be your duty to return your verdict for that sum which will be fair and reasonable compensation for all of the damages sustained by the plaintiff, if any, as shown by the preponderance of the testimony, as a direct and proximate result of the negligence, if any, of the defendant, in the injury and death of the deceased George Collins." This was the only instruction obtained by the plaintiff on the measure of damages, and appellant complains earnestly of it because of its generality of language. This instruction in its identical language appears in Gulf Refining Company v. Miller, 153 Miss. 741, 744, 121 So. 482, wherein the court said that the instruction was not objectionable, and that, if the defendant desired the jury to be further informed as to the particular elements of damages which the jury might consider or might not consider, the defendant should request and obtain instructions to that effect.

The defendant did request and obtain, under the privilege last mentioned, two cautionary or limiting instructions; one to the effect that the jury should allow nothing for the life expectancy, but the instruction is obscure as to whether it meant the life expectancy of the deceased or whether that of the principal beneficiary. However, the instruction is correct in substance whether it meant the life expectancy of the deceased (Belzoni Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470; Gulf Refining Co. v. Miller, 150 Miss. 68, 116 So. 295; Natchez Coca-Cola Bottling Co. v. Watson, 160 Miss. 173, 133 So. 677) or whether the life expectancy of the principal beneficiary, the latter for the reason that there is not a word of evidence as to the "age and health, constitution," etc., of any of the beneficiaries (Mississippi Oil Co. v. Smith, 95 Miss. 528, 535, 48 So. 735, 737). The other limiting or cautionary instruction requested and obtained by the

defendants was to the effect that the jury should allow nothing for the loss of the society and companionship of the deceased, which was plain error, unless it can be defended upon the ground that there was no evidence of the life expectancy of the beneficiaries, there being no proof of their health, for it is definitely established that damages for the loss of society and companionship, but not by way of solatium, may be recovered under our statute. St. Louis & S. F. Railroad Co. v. Moore, 101 Miss. 768, 58 So. 471, 39 L. R. A. (N. S.) 978, Ann. Cas. 1914B, 597; Gulf & S. I. Railroad Co. v. Boone, 120 Miss. 632, 82 So. 335; Moore v. Johnson, 148 Miss. 827, 833, 114 So. 734; Gulf Refining Co. v. Miller, 153 Miss. 741, 121 So. 482; Yazoo & M. V. Railroad Co. v. Beasley, 158 Miss. 370, 130 So. 499. The defendant requested a third cautionary or limiting instruction that the jury should allow nothing for the supposed pain and suffering of the deceased, which instruction was refused by the court, and erroneously, for the reason that the evidence shows, without dispute, that the deceased was unconscious when witnesses reached him immediately after the accident, and that he so remained until his death a short time thereafter. His injuries were of such serious nature that it would be nothing more than conjecture that he was conscious for any appreciable or substantial period of time after being struck. Gulf & S. I. Railroad Company v. Boone, 120 Miss. 632, 659, 82 So. 335; Gulf & S. I. Railroad Company v. Simmons, 150 Miss. 514, 538, 117 So. 345; Moore v. Johnson, 148 Miss. 827, 833, 114 So. 734; Rowe v. Fair, 157 Miss. 326, 336, 128 So. 87. Appellee argues that the proof does not show that the deceased did not suffer for the few seconds from the time he was struck until he was reached by the eyewitnesses. In this contention appellee has reversed the rule as to the burden of proof which was on the plaintiff, and not on the defendant.

It is thus seen that, as the case stood before the jury under the instructions, all that was left to them to consider as elements of damage were: (1) The net probable pecuniary losses to the plaintiff by reason of the death; and (2) the damages for the supposed pain and suffering of the deceased. The award of damages for the loss by a parent of the services of his child and for the loss of probable gratuities is to be confined to the reasonable net value to the parent of those services from the time of death up to majority, to which may be added such gratuities, using that term in a broad sense, as there is a reasonable expectation of receiving either before or after majority; but no allowance for gratuities may be made except upon evidence of gratuities which had been received in the past. Cumberland Telephone & Telegraph Co. v. Anderson, 89 Miss. 732, 744, 41 So. 263—see comment on that case in New Deemer Mfg. Co. v. Alexander, 122 Miss. 859, 897, 85 So. 104. And both the features above mentioned are limited by the life expectancy both of the minor decedent and of the parent; that is to say, to the life expectancy of the one who would die soonest; and therefore as to both there must be proof, not only of age, but also of health, constitution, etc. Mississippi Oil Co. v. Smith, 95 Miss. 528, 534, 48 So. 735. And brothers and sisters may also recover for gratuities, using that term in a broad sense, reasonably to have been expected as a probability; but this also must be based on evidence of previous gratuities, as well as upon the respective life expectancies, otherwise the issue would degenerate into mere possibilities, or speculations or conjectures.

It is not the purpose of the statute creating a right of action for death that the death shall be converted into an occasion for speculative profit in behalf of any of the beneficiaries, whoever they may happen to be. The conception of any profit at all, whatever the character there-

of, out of the misfortune of death would be no less obnoxious to the statute than to sentiment. Damages (1) for the pain and suffering of the deceased before his death, and (2) for the loss of companionship and society, but not by way of solatium, and (3) compensation estimated on the present net value of any pecuniary benefits which the evidence discloses that the beneficiaries had a reasonable expectation of receiving from the decedent during their respective lives had he continued to live, complete the measure of the statutory purpose.

The evidence shows that the boy killed was thirteen years old, and lived and worked with his mother on a small farm of about eight acres in cultivation. It is not shown that he had any estate, or that he had ever conferred gratuities, or that he had anything out of which to bestow gratuities. That no such amount as seven thousand five hundred dollars could be found out of loss of services is too plain for argument, even when we leave aside the fact that there was no proof as to the life expectancy of any of the beneficiaries. It follows that the jury must have resorted to the element of pain and suffering, or some other element not within the law in arriving at the amount fixed by them. But it is so apparent from all the evidence that the jury had so little upon which to stand as to the element of pain and suffering of the deceased that we are driven to the conclusion that the jury must have resorted also to some other consideration not within the law in arriving at the amount fixed by them.

And this brings into view the following assignment of error: Upon the voir dire the jury panel was asked the question by counsel for the plaintiff whether any of the jury was engaged in the business of accident or indemnity insurance, to which counsel for the defendant objected, and, on the objection being overruled, the defendant requested that the court expressly admonish

the jury that the matter of insurance had nothing to do with a decision upon the merits of the case, and that 'the jury must not consider it in arriving at their verdict; but the court wholly refused the request, and this refusal was in the presence and hearing of the jury, whereupon the defendant moved for an order of mistrial and for a new jury, none of the members of which had heard of the insurance issue, and this was likewise overruled by the court.

In Herrin v. Daly, 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605, this court held, for obvious reasons, that to permit any evidence that the defendant carried indemnity insurance was error. It would be idle to hold that information respecting insurance may not be given the jurors by evidence, and then permit it, in effect, to reach them by other maneuvers of the plaintiff during the trial. At the same time, the plaintiff no less than the defendant, is entitled to a fair jury; and hence it was held in Yazoo City v. Loggins, 145 Miss. 793, 808, 110 So. 833, 835, that, because the plaintiff had the right, so long as acting in good faith, to ascertain the qualifications of the jurors, and each of them, the matter of their connection with the business of insurance was pertinent in insurable cases. But the court remarked that "such an examination may usually be conducted in such a manner as not necessarily to disclose the existence of such insurance in the particular case." Reaffirming that observation of the court, we would now add as a corollary thereto that the proper means of ascertaining the qualifications of a tendered juror in respect to his insurance connections is to ask him what business he is engaged in, and, if he answer, for instance, that he is a farmer, then the further precautionary question may be put to him whether he has any other business or business connections, and, if he answer that he has not, that usually ought to end the privilege so far as inquiry into his insurance connections are concerned.

There may be cases, nevertheless, wherein it will happen that there will be no reasonable method at getting at the question of the juror's qualification on the issue of his insurance connections except by interrogatories which will disclose that the defendant in the particular case is probably insured, but the trial judge should see to it that the necessity exists in the particular case, and, when such interrogatories are put to a juror, the trial judge in the plain interest of fair trials must, upon request of the defendant, admonish the jury that the matter of insurance shall have nothing to do with the decision of the case either upon the issue of liability or upon the amount of damages. It was error for the trial judge to refuse that admonition, upon the request of the defendant, in the present case.

Inasmuch as it is apparent from this record that the jury, in arriving at the amount of the verdict, must have considered elements of damages not permitted to them under the law as given by the court, or else resorted to extraneous matters not within the law, we are without recourse except to set aside the verdict as to damages and to remand the case for a new trial, but solely upon that issue.

Affirmed as to liability; reversed and remanded as to damages.

### ON MOTION TO RETAX COSTS.

**Griffith,· J.**, delivered the opinion of the court on motion.

On a former day the judgment appealed from was affirmed as to liability, but reversed and the cause remanded upon the issue of damages, and the costs of the appeal were taxed against the appellee (Miss.) 157 So. 695. Appellee now moves the court to retax the costs,

contending that appellee was successful upon the main issue before the court and should not be required to bear the entire costs of the appeal.

The latest case in this court upon the subject of this motion is Ætna Life Ins. Co. v. Thomas, 166 Miss. 53, 62, 144 So. 50, 146 So. 134, wherein the statutes and previous cases were reviewed at some length. Adhering to the reasoning applied in that case, the motion now before us must be overruled.

Motion overruled.