## STANDARD OIL CO. *et al. v.* CRANE.

(In Banc.   Sept. 24, 1945.)

(23 So. (2d) 297.   No. 35895.)

Wallace & Greaves, of Gulfport, for appellants.

72

74

Parker & Busby, of Meridian, and U. B. Parker, of Wiggins, for appellee.

78

Argued orally by **R. A. Wallace**, for appellant, and by **Arthur Busby**, for appellee.

**Alexander, J.,** delivered the opinion of the court.

The appellee, as plaintiff, brought suit to recover damages arising out of the death of her husband in a collision between a car driven by him and a truck owned by the Standard Oil Company driven by its servant Davis, who is a joint defendant. From a verdict of $15,000 in plaintiff's favor, defendants appeal.

The first assignment of error relates to the refusal to grant a peremptory instruction to the defendants. We find no error here. The defendants'· gasoline truck was proceeding north on a paved highway near the Town of McHenry. The accident happened early upon a foggy morning during the latter part of November 1941. Plaintiff's husband was driving a passenger car south and had

as a passenger the wife of his employer. Both occupants of the car were instantly killed in a collision with the truck. According to all the eyewitnesses, the collision was caused by one of the vehicles striking a cow which was attempting to cross the highway from east to west, resulting in a sudden convergence of the two vehicles. There is sharp conflict whether the truck or the car struck the animal. There is evidence to support either theory. We need not elaborate this testimony. It was for the jury in its appraisal of the credibility of the witnesses in the light of the physical evidences to resolve this conflict.

Other assignments directed to the issue of liability involve the exclusions of certain evidence and the granting of certain instructions for the plaintiff. The following questions propounded to defendants' witness Hood are examples of those excluded by the court: "Did you determine the place on the highway where the animal was struck by the vehicle?" "Were you able to determine the place on the highway where the animal was standing or walking when it was struck?" "I will ask you, from what you saw, whether the animal was struck with great or slight violence?" We do not decide whether the witness, who was a member of the State Highway Patrol, was an expert in interpreting signs of collision. The questions standing alone would produce no helpful answers, and, unless followed by a request for an expert version, would be without point. Ordinarily the interpretation of physical circumstances is a function of the jury. The location of the cow when struck could be determined by one not an eyewitness only by the location and extent of the gory evidences of its dismemberment strewn along the highway. Exclusion of this testimony deprived the jury of no helpful aid to its own powers of deduction.

The giving of the following instruction for the plaintiff is assigned as error: "The court charges the jury for the plaintiff that if you find for the plaintiff, it will be your duty to return your verdict for that sum which will be

fair and reasonable compensation for all damages sustained by the plaintiff, if any, as shown by a preponderance of the testimony as a direct and proximate result of the negligence of the defendants in causing the injury and death of the decedent, A. B. Crane, Jr., and in calculating the amount of such damages you may take into consideration all of the evidence, if any, concerning the physical pain and mental anguish, if any, suffered by the deceased, A. B. Crane, Jr., between the time of the collision and the time of his death, if the jury should find that said A. B. Crane, Jr., was not killed instantly." The targets of appellants' attack are (1) authorization to fix compensation for "all damages sustained by the plaintiff"; (2) the implication that the defendants were negligent; and (3) an alleged failure to confine the applicable negligence to that set forth in the declaration. The instruction is predicated upon the condition that the jury first find for the plaintiff, a conclusion which could not be reached unless negligence was first adjudged, upon which issue other instructions fully set out the applicable tests. Nor do we find reversible error in the authorization to fix their verdict "for that sum which will be fair and reasonable compensation for all damages sustained by the plaintiff, if any . . ." Defendants procured an instruction invoking the doctrine of comparative negligence. This is not a case disclosing that both actors in the tragedy could be guilty of negligence causing the death of plaintiff's husband. We are without power here to charge plaintiff with contributory negligence in the face of the jury's implied acquittal of him by the only alternative verdict of guilt on part of defendants. Hence, the principle laid down in Graves v. Johnson, 179 Miss. 465, 176 So. 256, is not applicable. The instructions as a whole limited the elements of damage to those only which were claimed in the declaration and which were allowable by law. Some of the other instructions complained of would, if they stood alone, invite critical comment, but

we find no reversible error in them. The verdict upon the issue of liability must therefore be affirmed.

Special attack, however, has been made upon the amount of the verdict, and upon certain instructions which authorized the jury to take into account allegedly improper elements of appraisement. The instruction quoted includes a warrant to "take into consideration all the evidence, if any, concerning the physical pain and mental anguish, if any, suffered by the deceased A. B. Crane, Jr., between the time of the collision and the time of his death, if the jury should find that the said A. B. Crane, Jr., was not killed instantly." An instruction requested by the defendants which would have excluded this element was refused. There was no substantial proof that the deceased retained consciousness after the collision. Such burden of proof remained upon the plaintiff. Witnesses who arrived at the scene shortly after the accident found plaintiff's decedent dead, with violent and crushing marks upon his head and one leg broken. The only testimony by which it is sought to meet the evidential burden is the circumstance that the deceased was found clutching a pencil in his hand. The argument of plaintiff's counsel, made a basis for a bill of exceptions, pressed the theory that deceased was trying to indite some final message. The testimony is at least equally consistent with a possession of the pencil prior to the wreck, and is otherwise insufficient to establish a persistent consciousness. It is true that in St. Louis & S. F. R. Co. v. Moore, 101 Miss. 768, 58 So. 471, 473, 39 L. R. A. (N. S.), 978, Ann. Cas. 1914B, 597, a similar instruction was considered but neither approved nor condemned by this Court. The Court said: "If it be error, it is therefore harmless; and looking through the entire record, and taking into consideration the amount of the verdict, we cannot say that the instruction is reversible error. The verdict was evidently right on the facts." The same considerations, however, lead to a more definite finding here. The amount of the verdict and the restricted bases upon

which it may stand indicate that the matter of pain and suffering was unquestionably an influential factor. Counsel for plaintiff so considered it for in his argument to the jury the point was stoutly pressed. We hold, therefore, that it was error here to refuse defendants' instruction excluding, and to grant plaintiff's instruction including, deceased's pain and suffering as an element of damage. Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552.

Plaintiff's fifth instruction allowed the jury to compute and include as damages the value of the "support of the plaintiff and the association, society and companionship of her deceased husband." These are of course proper elements of damage in such cases. The complaint here, however, is that since these are the only available bases for estimate, the verdict was excessive.

As a defense in mitigation, if not in bar of damages, defendants pleaded a bill theretofore filed by plaintiff against her husband seeking separate maintenance. The allegations of this bill which was admitted in evidence include the following:

"That complainant and defendant were lawfully married in Lauderdale County, Mississippi, on August 13, 1939, and lived together as man and wife in Lauderdale County, Mississippi, until July 1, 1941, on which date, the defendant committed an assault and battery upon complainant and packed his things and deserted the complainant, wholly without cause or excuse for doing so, and forced the complainant to deliver to him her wedding ring, and the defendant has never since said date lived with or offered to live with the complainant, and left the complainant wholly without support or means of livelihood.

"That defendant is a habitual drunkard, and has been and is wasting his substance in riotous living, in associating with other women in an improper manner, and utterly ignores this complainant and her rights as his wife, and spends all of his social life with other women, most of the time with Mrs. Z. E. Roth, wife of the defendant's

employer, and that the said Mrs. Roth has urged this complainant to divorce the defendant, which this complainant has no desire to do, for the accommodation of the said Mrs. Roth.

"That the defendant is a stout, able-bodied man, with regular employment, and earning $45.00 per week, and notwithstanding his ability to support the complainant, he has not contributed any sum whatsoever for her support since his desertion, and the complainant is left entirely without support, and is in immediate need of support from her husband."

The bill was sworn to and was made returnable to the day on which the husband was killed. Service of process was not had and was returned "not found." The third party mentioned in the bill was the companion of the deceased in the southbound car, and was killed in the same collision.

The sworn allegations of a bill by which a litigant seeks to move a court to its relief may not be lightly disavowed by affiant when, in another proceeding, its recitals rise to plague him in an inconsistent course. Indeed, in the absence of special circumstances or explanation, a court has the right, if not the duty, to hold a litigant to the position which he takes in seeking its aid and, by assuming in his behalf utter good faith in the first instance, to reproduce such assumption later, even to his hurt. Certainly, insincerity or bad faith may never be pleaded in a tribunal which demands the contrary.

It is urged that the sworn bill eliminates the elements of association, society and companionship as items of damage. The jury may well have so found, but they evidently did not, and we can not say that all sparks of hope for some measure of reconciliation had been completely and finally quenched. In this connection, plaintiff testified that she loved her husband in spite of his treatment of her; that she did not seek nor desire a divorce but that the other woman had requested her to divorce him; that the language of the bill was not her own but

her solicitor's; that they had been married about two years before he was killed; that she was then living and working in Washington, D. C.; that during the period preceding his death her husband had contributed nothing to her support; and that her purpose in filing her bill was that she "felt maybe it would bring him to realize what he was doing and he would come back and everything would be all right." To say that at the time of his death the husband was furnishing neither support nor consortium is to accept undisputed facts. To assume that either or both may, under altered conditions, have been reasonably expected, is to build a structure of speculation with the frail figments of a quickened hope. Yet, a concession that the jury may weigh her oath against her explanation should not be enlarged to allow them to discard the weight of the former. The substantial amount of the verdict is more than a mere indication that they did so. Unless, therefore, the factor hereinafter mentioned would justify the verdict, it would be all out of proportion to the undisputed facts however much they may be mitigated by any reasonable counteracting probabilities. Belzoni Lumber Company v. Langford, 127 Miss. 234, 89 So. 919, 18 A. L. R. 1406; Avery v. Collins, supra; Cf. Jackson v. Town of Port Gibson, 146 Miss. 696, 111 So. 828.

As stated, the plaintiff's sworn bill and her own testimony showed that at and for a period preceding his death, her husband was refusing to contribute to her support. As to the reasonable probability that this situation would have later been altered, we need not reproduce our views from the preceding paragraph. Yet, the husband could be compelled by law to contribute to her support. There was no proof showing the life expectancy of either the husband or the wife. See Goodyear, etc., Co. v. Anderson, 171 Miss. 530, 157 So. 700. At the time of his death, he was earning $45 per week as an employee of the husband of the woman who was his traveling companion and shared his tragic fate. The jury had little

to guide them even in the matter of compulsory contribution where a court would take into account many factors not here disclosed.

Under all the circumstances, and from any view of the case, an award of fifteen thousand dollars is grossly excessive. The cause will be affirmed as to liability but reversed for hearing upon the issue of damages only. If, however, the appellee will enter a remittitur of ten thousand dollars, the judgment will be affirmed for five thousand dollars.

Affirmed with remittitur.

**Smith, C. J.**, is of the opinion that the judgment of the court below should be affirmed, but does not care to delay the decision of the case by holding it up until he has an opportunity to write a matured dissenting opinion, in which **Roberds, J.**, concurs.