## McMinn, et al. *v.* Lilly.

Oct. 20, 1952

No. 38479          4 Adv. S. 9          60 So. 2d 603

*Snow & Covington,* for appellants.

*Gerald Adams* and *M. V. B. Miller,* for appellee.

McGEHEE, C. J.

The judgment involved on this appeal is for damages on account of personal injuries sustained by the plaintiff Paul Lilly when an accident occurred between the truck of the Dr. Pepper Bottling Company and the plaintiff's bicycle on April 11, 1950. At the time of the accident and injuries the plaintiff was about nine years and two months of age and was riding his adult size bicycle on the right side and near the outer edge of the pavement and down a fairly steep grade and in a northerly direction towards the City of Meridian. He was preceded by his older brother, Max Lilly, on a bicycle some 10 or 12 feet distant. It is undisputed that neither of the boys gave any signal of an intention to depart from their straight course near the right edge of the pavement, but according to their testimony they were still pursuing such straight course at the time of the collision between the plaintiff's bicycle and the truck of the bottling company which overtook them from the rear.

It is undisputed that the defendant E. M. Richardson, driver of the Dr. Pepper Bottling Company truck, which he was operating as an employee of the defendant Clyde McMinn, owner of the bottling company, saw these boys on their bicycles as he came over the top of a hill from the south and at a time when he was at least 100 yards distant from them; that the collision occurred about 100 feet further down the hill to the north; that the bottling company truck met and passed a cattle truck at or near the top of the hill, and that it met and passed a red pickup truck about 50 feet up the hill from where the accident occurred; that as the bottling company truck

came over the hill from behind the boys it was traveling at only about 30 miles per hour; that after passing the cattle truck near the top of the hill and seeing the red pickup truck approaching him from the direction that the boys were travelling the driver anticipated that unless he reduced his speed he would likely meet the red pickup truck about the time he would be ready to pass the boys on their bicycles; and that therefore he reduced his speed to about 20 miles per hour and with the result that he met the pickup truck about 50 feet up the hill from the scene of the accident as aforesaid.

Although the driver of the defendant's truck when at the top of the hill had seen the boys about 100 yards ahead of him and riding down a fairly steep grade, and although the accident occurred about 100 feet further down the hill than the original 100 yards distance that separated them, he was unable to testify that he ever at any time sounded his horn or gave any other audible warning. He said that he didn't remember whether he did or did not blow his horn. The two Lilly boys testified that he did not blow the horn, and they were corroborated by other witnesses, including a boy companion, Bobby Ellis, who was walking up the hill between the bottling company truck and the two bicycles. However, the truck driver gave as his reason for not sounding the horn, if he did fail to do so, that both of the boys turned their faces toward him and were looking at him shortly after he came in view, and that he therefore thought that they both saw him and his truck approaching. The older boy, Max Lilly, who was riding ahead, admits that he looked back and saw the truck approaching but testified that he didn't know whether the plaintiff saw the truck or not; that as they were about to meet the red pickup truck as it came up the hill he again turned and said to the plaintiff, who was following him 10 or 12 feet away, ''Look out for the trucks''; but the plaintiff, Paul Lilly, testified that he did not know that the bottling company truck was behind him

at all and did not notice the red pickup truck that he was meeting; and that he did not know what had struck him until he was later told in the hospital.

The truck driver testified that while he was traveling at about 20 miles per hour and was passing the plaintiff about 6½ to 7 feet to the left of the bicycle, and at a time when the bumper of his truck was about even with the front wheel of the bicycle, the plaintiff suddenly turned his bicycle to his left and ran into the truck, striking it on the fender just behind the right front wheel. The plaintiff testified positively that he did not make any turn but continued straight forward near the right edge of the pavement, and according to all of the testimony on behalf of the plaintiff the truck had a space of approximately 18 feet within which to pass the bicycle on its left and to thereby avoid the collision. Max Lilly testified that when he heard the crash and the screeching of the brakes of the truck he looked back and saw the bicycle fly out from under the back end of the truck toward the right edge of the pavement.

It was fully established by the proof that the truck came to a stop with its right rear wheel near the center line of the pavement and its left front wheel near the left edge of the pavement; and that the skid marks of the truck began about 5 feet from where the bicycle finally rested on the pavement, but only about 2 or 2½ feet from the right edge of the pavement, and continued for a distance of 9 steps; that when the brakes were first applied the rear wheels of the truck locked and when it finally came to rest the plaintiff's feet were pinched against the pavement by the right rear dual wheels; that thereupon the driver backed the truck up and the plaintiff was removed from underneath the same and was immediately carried to the hospital in the arms of the truck driver in a car in which he was accompanied by Messrs. Enzor and Davidson, who happened to be a short distance away at the time of the accident. These two men testified that

en route to the hospital and while the car was being driven at about 90 miles per hour, the truck driver stated that the accident occurred so quickly that he didn't know just how it happened, but they admitted that the truck driver did not undertake to go into details in this time of excitement and suspense. Enzor finally admitted that the truck driver did say that he did not know what caused the boy to run into his truck.

Later, at the scene of the accident, the truck driver pointed out to the sheriff, in the presence of Davidson and others, a red mark about 2 inches long on the right fender of the truck which he claimed was caused by red paint from the practically new bicycle when it came in contact with the green fender of the truck. However, the sheriff testified that it didn't look to him like fresh paint, and there was testimony that the bicycle did not disclose that any paint had been removed from it.

(Hn 1) One of the errors assigned is the refusal of the trial court to permit the truck driver on behalf of himself and his co-defendant McMinn, to prove that on this occasion he pointed out and stated more in detail as to how the accident occurred in amplification of his alleged statement to Enzor and Davidson en route to the hospital. But we are of the opinion that on the trial as a whole the jury got the benefit of his contention that the bicycle turned to its left and ran into his truck, and that if there was error in the court's refusal to permit the truck driver to tell all that he said later to the officer in the presence of Davidson and others at the scene of the accident, it does not constitute reversible error under all of the facts and circumstances of the case.

It was for the consideration of the jury as to whether or not the plaintiff when riding his bicycle at 5 or 6 miles per hour along the side of the truck which was being driven at 20 miles per hour, could have turned and traveled 6½ or 7 feet to its left so as to connect with the truck on the fender immediately behind the front wheel.

**(Hn 2)** It is also assigned as error that the trial court denied the defendants a continuance of the case on account of the absence of Mrs. Ben Enzor, who was in the hospital with high blood pressure and who had been personally served with process as a defense witness. On the application for continuance one of the attorneys for the defendants and others testified that they visited the scene of the accident and then went to the nearby home of Mrs. Enzor on the west side of the highway and that she stated to them that the accident was not the fault of the truck driver and that she would tell the truth about it if it was her own child involved; that she heard the horn, or rather the "whistle," on the Dr. Pepper Bottling Company truck when it was blown and that she knew that it was the whistle on that truck because under her version of the occurrence it was the only truck there at the time the collision occurred, and that the plaintiff had turned from his course and had run the bicycle into the truck. But as above shown the bicycle would have been on the opposite side of the truck from where she said she was in her front yard painting a swing at the time. Moreover, she later furnished an affidavit to the plaintiff's attorneys, which was introduced in evidence on the motion for continuance, wherein she stated in substance that she did hear a horn blow but that she did not know which truck it was on, and that she did not see the bicycle run into the side of the truck. The trial court overruled the application for continuance but gave as a reason the fact that if the plaintiff had looked back and had seen the truck as it approached it would be immaterial whether the truck driver blew his horn or not. Although this ruling overlooked the fact that the question of whether the plaintiff himself had looked back and seen the truck was in dispute and was one of the main issues to be determined, we have reached the conclusion that the case should not be reversed because of the denial of the continuance since on the motion for a new trial it was not shown by her affi-

davit or otherwise as to whether she would testify to the version given by her to the defendants' attorneys or to that given by her to the attorneys for the plaintiff. In this connection the defendants' attorneys asked that the hearing on their motion for a new trial be postponed until they could procure her attendance since they did not want to disturb her at the hospital in obtaining her affidavit. We do not think the showing as to what she would have actually testified to under oath in court was sufficient to enable us to say that the trial court was in error in not setting aside the verdict and granting a new trial.

(Hn 3) It is also assigned as error that the trial court was in error "in not sustaining the appellants as to each and every ground set forth in their motion for a new trial." This motion, as filed in the trial court, assigned among other grounds for a new trial that the verdict of the jury in the sum of $20,000.00 was excessive; and this question is briefly mentioned in the brief here on behalf of the appellants. Assuming that this issue is, therefore, properly presented to us, we are taking occasion to say that while the verdict is a large one, we are unable to hold, with confidence, that we would be justified in ordering a reduction in the amount of damages assessed, for the reason that this boy was thrown or fell onto the pavement in such manner as to cause two line fractures of the skull; was dragged underneath the truck for such distance and in such manner as to remove so much of the flesh and skin from inside of one of his ankles and left a scar about 3½ inches square on one foot and a severe injury to the other; was in a dying condition for several days during his 24-day confinement at the hospital; suffered intense pain, and is still suffering from headaches according to the testimony of several witnesses on behalf of the plaintiff; is crippled to some extent; and because of other factors testified to by the attending physician which may necessitate at a later date the engrafting of

more flesh and skin on the affected part of his foot. In other words, we are unable to say that the verdict was influenced by bias, passion or prejudice on the part of the jury against the defendants.

(Hn 4) Nor do we think that the verdict was against the overwhelming weight of the evidence on the issue of negligence on the part of the truck driver in view of the facts hereinbefore stated, together with the physical facts hereinafter mentioned, since it was for the consideration of the jury as to whether or not the accident had occurred in the manner testified to by the defendant truck driver. When it is considered that the front part of the bicycle was not damaged in any manner and the seat, pedal, and rear wheel were almost demolished, the jury could have reasonably believed that the bicycle was struck from the rear when the truck was making the curve and turning to its left, carrying the bicycle and the boy underneath the back end thereof, the skid marks of the truck having commenced within less than 3 feet of the right edge of the pavement.

It is further contended for the defendants that the truck driver had the right to assume that the plaintiff would obey the laws of the road and not turn his bicycle to the left and out into the paved highway without giving a signal or warning of his intention to do so, and that therefore under the facts of this case there could be no liability. The answer to this contention is, first, that there was an issue for the jury on conflicting evidence as to whether the plaintiff did in fact turn his bicycle to the left and out toward the middle portion of the pavement and into the side of the truck; and, second, the defendants are in error under previous decisions of this Court in contending that the driver of a motor vehicle may assume that others on the highway will obey the laws of the road. Ulmer v. Pistole, 115 Miss. 485, 76 So. 522; Terry v. Smylie, 161 Miss. 31, 133 So. 662; Thomas v. Fiebelman, 164 Miss. 699, 145 So. 607; Cox v. Dempsey,

177 Miss. 678, 171 So. 788; and Rawlings v. Inglebritzen, 211 Miss. 760, 52 So. 2d 630. The Louisiana case of Cantrell et al. v. H. G. Hill Stores, 193 So. 389, and other cases cited by counsel for appellants seem to hold to the contrary, but we adhere to the rule announced in our own previous decisions on this question above cited. But, of course, **(Hn 5)** a motorist is not required to anticipate the action of another person on or along the highway, whether a child or an adult, unless he knows, or by the exercise of reasonable care should know, of the presence of such person.

If the plaintiff had in fact suddenly turned his bicycle to the left so as to run into the truck, there would, of course, be no liability against the truck driver and his employer provided the truck driver had exercised the proper care to make it known to the rider of the bicycle that the truck was approaching from the rear and intended to pass the bicycle. However, if the boy continued to ride in **(Hn 6)** a straight course along the right edge of the pavement, as he testified that he did, then he would have been entitled to do so even if the horn of the truck had been blown. In other words, the plaintiff was not required to get off of the highway in order to permit the truck to pass him where he had left approximately 18 feet of pavement on his left side, which was then unobstructed for the passage of the truck. Moreover, **(Hn 7)** a motorist when passing children who are playing or riding on the streets or highways is required to use proper care in giving the necessary signals, in bringing his car under control, and in anticipating the unusual and impulsive actions characteristic of persons of immature years. This rule implies that when the motorist sees a child or young person on the street ahead of him, he must be ready to guard against an unexpected and sudden movement on the part of the child, calculated to endanger the child's safety, and the motorist must anticipate that young persons will not always act to protect themselves .

from danger as will a mature adult under the same circumstances. 2 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Edition) p. 540, Sec. 1501 and Sec. 1502, p. 544; Albert v. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A 240; Guillory v. Horecky, 185 La. 21, 168 So. 481; Cimo v. Karstendiek (La. App.), 173 So. 548. This rule does not impose liability if the motorist had used all reasonable precautions to avoid an accident and the sudden act of the child creates an emergency rendering it impossible for the motorist to avoid hitting the child, the accident in such case is said to be unavoidable and there is no liability. But in the instant case the facts presented an issue for the jury as to whether or not the truck driver had used all reasonable precautions to avoid the accident and whether any sudden act of the child had created an emergency such as to render it impossible for the motorist to avoid hitting the child.

It is urged, however, and we think it is sustained by the preponderance of the evidence, that the plaintiff was wearing long bluejean pants and that the truck driver thought he was of sufficient age and experience to know better than to turn his bicycle without giving a signal, since he seemed to have it under control when the truck driver was approaching from the rear. **(Hn 8)** But it was for the consideration of the jury as to whether or not the fact that this 9 year old boy was wearing long bluejeans would of itself reasonably indicate to the truck driver that he was of a more advanced age, since the jurors may have known as a matter of common knowledge that both boys and girls begin wearing long bluejeans much earlier than 9 years of age.

If the defendants had interposed the affirmative and partial defense of contributory negligence in this case, then under the case of Johnson v. Howell, 213 Miss. 195, 56 So. 2d 491, they would have to carry a heavier burden in regard to an injury to a minor child between the ages of 7 and 14 years, for the reason that it was held in that

case that "such a child is prima facie presumed not to be possessed of a sufficient discretion to make him guilty of contributory negligence in failing to exercise due care for his own safety."

(Hn 9) Based upon the contention that a motorist has a right to assume that other persons will obey the traffic laws, the defendants complain that it was error to have granted instructions for the plaintiff which imposed the duty on the truck driver when observing the plaintiff riding his bicycle along the righthand side of the pavement with his back to the truck to "sound the horn of the truck and to·continue to sound the horn at short and frequent intervals until the plaintiff became aware of the approach of the truck, and that if the plaintiff did not become aware of the approach of the truck it was the duty of the defendant to apply his brakes and come to a stop if necessary, . . . " In the case of Avery v. Collins, 171 Miss. 636, 157 So. 695, the motorist saw a negro boy 13 years of age walking about 150 to 175 feet ahead of him and about 4 feet from his righthand side of the graveled roadway, which was about 18 feet wide. Upon seeing the boy so situated, with his back toward the motorist, the latter sounded his horn, and thereupon observing that the deceased paid no attention and was still apparently unaware of the approach of the automobile the motorist turned to the left and proceeded at an undiminished speed of about 30 miles an hour, with the expectation of passing on the left side of the road and to the left of the boy. When the motorist came within 20 feet of the boy, the latter for the first time became aware of the presence of the approaching automobile and instantly jumped to his left and into the path which the automobile was then pursuing. He was so severely injured that he was rendered unconscious and died soon thereafter. The court said that as soon as the motorist observed the pedestrian walking on the right side of the road with his back to the automobile, "it was the duty of the driver to sound

his horn, and to continue at short and frequent intervals to sound the horn until he observed that the pedestrian had become aware of the approach of the automobile. And, when it was observed that the pedestrian continued unaware, it was the duty of the driver to apply his brakes and to slow down, and to come to a stop, if necessary, before the pedestrian was reached.'' That case was cited with approval in Stevenson v. Robinson, 37 So. 2d 568.

The defendants obtained approximately 20 instructions and almost an equal number were granted to the plaintiff. We are of the opinion that the defendants received a number of instructions to which they were not entitled and that they were denied one or two instructions to which they were entitled, but when all of the numerous instructions on both sides are considered together we are of the opinion that they fairly stated the law of the case.

(Hn 10) The instruction granted the plaintiff that gives us the most concern is one wherein the court tells the jury that it is the duty of a truck driver in approaching one from the rear on a highway to make known the approach of the truck, and one who fails to do so, does so at his peril and is responsible if the party being approached is injured as the proximate result of such failure, and that the fact that the driver sincerely believes that the person he is approaching knows of the approach of the truck is not an excuse for his failure to make known the approaching of the truck by some means. The contention is that this instruction enjoined the jury that even though the plaintiff looked around and directly toward the oncoming truck, and the driver saw him do this the latter could not depend on what he saw but was still bound to sound his horn and thereby make known the approach of the truck; and further that the instruction ignores the testimony of the plaintiff's brother who said that he had looked back and told the plaintiff ''to look out for the trucks.'' It will be noted, however, that the instruction requires, as a condition precedent to a verdict in favor of the plaintiff,

that the jury must believe that he was injured as the proximate result of the failure of truck driver to make known the approach of the truck. We have concluded that the jury could not have found that the plaintiff was injured as the proximate result of such failure if they thought the plaintiff had looked back and seen the truck in time not to turn into its pathway, or had been warned *in sufficient time* by his brother of its approach, both of which contentions of the truck driver were denied by the plaintiff. . We think that the verdict of the jury was tantamount to a finding that the plaintiff did not know of the approach of the truck either from having looked back toward it or by being warned by his brother in sufficient time. Moreover, the jury evidently considered it unreasonable that the plaintiff would have deliberately turned his bicycle out toward the center of the highway if he knew from any means that the truck was approaching him from the rear. Whatever recitals were omitted from this particular instruction we think are covered by the other instructions in the case.

Under all of the facts and circumstances we are of the opinion that the judgment appealed from must be affirmed.

Affirmed.

*Hall, Lee, Arrington* and *Ethridge, JJ.*, concur.