## MOAK, et al. *v.* BLACK

No. 40407 March 4, 1957 92 So. 2d 845

*Gordon & Kendall,* Jackson, for appellants.

*Lipscomb, Ray & Barksdale,* Jackson; *Brunini, Everett, Grantham & Quin,* Vicksburg, for appellee.

KYLE, J.

The appellants, C. B. Moak and his wife and three minor children, brought an action against the appellee, John M. Black, in the Circuit Court of Warren County to recover damages for the death of Clifton Ted Moak, a nine-year old child, who was killed as a result of the appellee's automobile colliding with a bicycle on which Clifton Ted Moak was riding, on U. S. Highway No. 51 in Lincoln County. Upon the trial of the case in the court below, the jury returned a verdict in favor of the appellee, and judgment was entered accordingly. The court overruled the appellants' motion for a new trial,

and from the judgment rendered against them the appellants have prosecuted this appeal.

The appellants' attorneys argue two points as ground for reversal of the judgment of the lower court: (1) That the verdict of the jury was contrary to the overwhelming weight of the evidence, and the court erred in overruling the appellants' motion for a new trial; and (2) that the court erred in granting to the appellee certain erroneous instructions.

The record shows that the appellants are all residents of the City of Brookhaven, in Lincoln County, and that the appellee is a resident of Warren County. The accident which resulted in the injury and death of Ted Moak occurred on June 5, 1955, as he was returning to his home from a nearby cafe situated on the east side of U. S. Highway 51 several hundred yards north of his home. He had gone to the cafe to get change for Sunday School. The appellee was driving his automobile southwardly along the highway when he overtook and attempted to pass the boy on his bicycle. The collision occurred at a point about 125 feet from the entrance to the Moak driveway.

The appellants alleged in their declaration that the appellee was negligent in the operation of his automobile, in that he failed to keep his automobile under proper control and to keep a proper lookout for the child on the highway, that he failed to exercise reasonable care to anticipate and guard against the actions and movements of the child after he saw the child riding his bicycle on the highway, that he failed to sound his horn and continue to sound his horn until the child became aware of the fact that the automobile was approaching, and that he failed to diminish the speed of his automobile and to apply his brakes and come to a stop before striking the child.

Ted's mother testified she was in the back yard approximately 175 feet from the point where Ted's body

was lying when she heard the collision. She heard no sound of an automobile horn immediately prior to the collision, and she heard no sound that would indicate that the brakes of an automobile had been applied before the collision. She went immediately to the scene of the accident. She found Ted lying on his right side; he was unconscious; and when Mrs. Moak placed her hand on the back of his head she found that it was bloody. The appellee's automobile had been brought to a stop on the shoulder of the highway near the entrance into the Moak driveway. The boy was carried to the hospital immediately, but died about 30 minutes later. Mrs. Moak testified that Ted was nine years of age and weighed about 50 pounds, and that he was in the fourth grade in school and of normal intelligence for a boy of his age.

E. C. Barlow, who was district attorney for the Fourteenth Judicial District at the time of the accident, testified that he received a telephone call from the chief of police of the City of Brookhaven a short time after the accident occurred, and was told that there had been a wreck on the highway and a child had been killed. He stated that he went to the police station immediately and talked to the appellee in the presence of the sheriff and other police officers. Barlow testified that the appellee stated to him that he was traveling south on the highway, and that the boy was traveling south ahead of him on a bicycle; that he saw the boy a good ways before he got to the place where the accident occurred; that he was driving his automobile at a rate of speed of about 35 or 40 miles per hour; and that just before he got to the boy, the boy began to lean over a little and pulled his bicycle a little over toward the center lane. Barlow stated that he asked the appellee whether he gave the boy any warning or signal that he was approaching. The appellee said, "Yes, I blew my horn." Barlow stated that the appellee was then asked how far he was from the boy when he blew his horn, and the

appellee said, ''Twelve or fifteen feet,'' and that the boy ''cut over into him.'' The appellee said that he did not apply his brakes until after the boy turned in front of his car, and that he put his brakes on after he hit the boy. Barlow stated that he and the chief of police examined the appellee's car. They found a dent on the right front fender and a dent on the windshield, and the glass of the windshield was cracked.

Barlow stated that he and the chief of police went to the scene of the accident, and the appellee went with them. Barlow and the chief of police measured the distance on the highway from the point where the collision occurred to the place on the shoulder where the appellee stated that he brought his car to a stop. The distance was 135 feet. Barlow stated that there were no skidmarks on the pavement, but about 18 feet south of the point of collision it looked like the brakes had been applied. He stated that he examined the bicycle, and found that the left hand bar of the bicycle was bent and the right pedal was broken off. He stated that the physical evidence on the pavement indicated that the greater part of the car was on the left side of the center line of the highway at the time of the collision.

Robert E. Case, the sheriff of Lincoln County, testified that he was with the district attorney when the appellee was questioned about the accident. He stated that the appellee said that he saw the boy for quite a distance before the accident occurred, that he tried to drive around him, and that he blew his horn when he was about 12 or 15 feet from the boy. The appellee said, ''he didn't brake his car before he hit him, because it was so sudden, it looked like he pulled out in front of him.'' The sheriff confirmed the statement made by the district attorney concerning the physical damage to the car and the bicycle. He stated that the bicycle appeared to have been hit about the mid-section. Clyde Coker, the chief of police of the City of Brookhaven, testified that he was

present when the appellee was questioned by the district attorney, and that the appellee stated that he was driving 35 or 40 miles an hour. The district attorney asked the appellee whether he made any effort to stop, and the appellee said that he did not make any effort to stop until the collision occurred. The appellee stated that the windshield of his car was broken by the little boy coming in contact with it.

Lynn Haggatt testified that he was sitting in his car in a private driveway about 150 feet from the point of impact when the collision occurred. His back was turned to the highway, and he did not see the collision. He learned about the accident about two minutes later, however, when he backed his car out onto the driveway and turned around and came into the highway. He saw the boy lying in the right lane of the highway going south about two or three feet from the center line. The bicycle was about 15 feet from the boy. The appellee's car was parked alongside Mr. Moak's driveway. Haggatt stated that he heard no sound of a horn immediately prior to the accident.

The appellee, testifying in his own behalf, stated that he left Vicksburg about 7:00 o'clock Sunday morning in his 1950 Plymouth automobile expecting to drive to McComb. He passed through Crystal Springs and down U. S. Highway 51 to Brookhaven. He saw the boy on the bicycle when he was in the vicinity of the Pan American Service Station located on the east side of the highway. There were no other automobiles in sight when he passed the service station. The appellee stated that he was driving about 35 or 40 miles an hour when he passed the service station, and as he approached the boy on the bicycle he saw no vehicle coming from the south and he started bearing to his left, in order to give the boy on the bicycle ample room. The appellee then said, "the closer to him I got, the farther over to my left I got, and at one time, I don't know the distance, he turned his

head slightly, it looked like to see if anybody was coming, and I figured he knew my presence; he could hear the traction of the car and sound of the motor, and when I got pretty close to him he made this sudden lefthand turn and I did everything in my power trying to eliminate hitting him, I applied my brakes and blew my horn and cut the car shortly to my left.'' The appellee stated that the boy gave no signal when he made the sudden turn. The appellee stated that he applied his brakes at that time, but did not skid his wheels. On cross-examination the appellee stated that the weather was clear, the visibility was good; that he saw the boy on the bicycle; and there was no question in his mind about it being a child on the bicycle. He stated that he was driving about 35 miles an hour, and when he was about half way between the service station and the point where the accident occurred, he eased his speed a little bit and took his foot off the accelerator. The boy was right in front of him when he blew his horn and applied his brakes. He was 10 or 15 feet from the boy at that time—''I was pretty close to him.'' The appellee stated that he did not blow his horn until he got within 12 or 15 feet of the boy, and that he blew his horn one time. He was asked why he didn't blow his horn back up the highway. His answer was, ''I was sure the boy knew I was approaching * * * I was sure that he heard me coming.''

██ ██ We think that the verdict of the jury was contrary to the overwhelming weight of the evidence, and that the court erred in overruling the appellants' motion for a new trial. Jones v. Carter, 195 Miss. 182, 13 So. 2d 623; Montgomery Ward & Co., Inc., v. Windham, 195 Miss. 848, 16 So. 2d 622; Flournoy v. Brown, 200 Miss. 171, 26 So. 2d 351; Vaughan v. Bollis, 221 Miss. 589, 73 So. 2d 160.

The appellee, according to his own testimony, saw the boy on the bicycle for a distance of several hundred feet

before overtaking him. The road was straight and the appellee's view was entirely unobstructed, and yet the appellee neither sounded his horn nor applied his brakes to reduce the speed of his car until he got within 12 or 15 feet of the boy. It was then too late to avoid hitting him. The appellee, according to his own testimony and according to the statements made by him to the officers immediately after the accident, did not do all that he could have done, or all that the law required him to do, to avoid the accident after he first saw the boy riding his bicycle along the highway.

In Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552, and in McMinn et al. v. Lilly, 215 Miss. 193, 60 So. 2d 603, this Court has laid down the rule of care required of motorists who are about to pass pedestrians or children riding bicycles on the highway.

In Avery v. Collins, the motorist saw a Negro boy thirteen years of age walking about 150 or 175 feet ahead of him and about 4 feet from the right-hand side of the graveled roadway, which was about 18 feet wide. The Negro boy was walking westwardly, with his back to the approaching automobile, and was unaware of its approach. Upon seeing the boy so situated the motorist sounded his horn, but the boy paid no attention and was still apparently unaware of the approach of the automobile. The motorist turned to his left, and proceeded at an undiminished speed of about 30 miles an hour, with the expectation of passing to the left of the boy. When he got within 20 feet of the boy the boy jumped to his left and into the path of the oncoming car. The boy was severely injured and died soon thereafter. This Court affirmed a judgment as to legal liability against the motorist and in its opinion said:

"It was the duty of the driver of the automobile in this case to keep to his right. As soon as he observed the pedestrian walking on that side, with his back to the automobile, it was the duty of the driver to sound

his horn, and to continue at short and frequent intervals to sound the horn until he observed that the pedestrian had become aware of the approach of the automobile. And, when it was observed that the pedestrian continued unaware, it was the duty of the driver to apply his brakes and to slow down, and to come to a stop, if necessary, before the pedestrian was reached. There was adequate time and opportunity within the one hundred fifty to one hundred seventy-five feet mentioned for the driver to have met all the requirements above stated and thus to have avoided the injury or rendered it improbable, and no case of sudden emergency is presented by the facts. * * * The driver of the automobile fell far short of that duty in this case, as his own testimony and that of his witnesses disclosed and beyond room for sustainable argument to the contrary.''

In McMinn et al. v. Lilly, supra, a child nine years of age, riding a bicycle on the right side and near the outer edge of the pavement, was struck by a truck approaching from the rear at a rate of speed of about 30 miles an hour. When the driver of the truck first saw the child, he was about 100 yards ahead of him, but the driver was unable to testify that he ever at any time sounded a horn or gave any other audible warning. The truck driver testified, however, that, as he was passing the child to the left of the bicycle, the child suddenly turned his bicycle to the left and ran into the truck striking the truck on the left front wheel. The jury in that case returned a verdict for the plaintiff, and in affirming the judgment entered thereon this Court in its opinion said:

"The plaintiff was not required to get off of the highway in order to permit the truck to pass him where he had left approximately 18 feet of pavement on his left side, which was then unobstructed for the passage of the truck. Moreover, a motorist when pass-

ing children who are playing or riding on the streets or highways is required to use proper care in giving the necessary signals, in bringing his car under control, and in anticipating the unusual and impulsive actions characteristic of persons of immature years. This rule implies that when the motorist sees a child or young person on the street ahead of him, he must be ready to guard against an unexpected and sudden movement on the part of the child, calculated to endanger the child's safety, and the motorist must anticipate that young persons will not always act to protect themselves from danger as will a mature adult under the same circumstances.''

The appellee in this case, according to his own testimony, had ample time after he saw the boy on the highway to sound his horn and reduce his speed and apply his brakes, if necessary, before attempting to pass the boy on the bicycle. The appellee had no right to assume that the boy knew that the automobile was approaching, merely because ''he turned his head slightly,'' or because ''he could hear the traction of the car and the sound of the motor.''

██ The power of the court to review the evidence and set aside the verdict of the jury in a case of this kind on the ground that the verdict is against the overwhelming weight of the evidence is a necessary incident to the right of trial by jury itself. The power of the court to set aside the verdict of the jury and grant a new trial in such cases should be exercised with the utmost care. But no court may refuse to exercise such power when fully convinced of its duty to do so. After a careful review of the evidence, we are convinced that the verdict of the jury in this case was against the overwhelming weight of the evidence, and that the appellants are entitled to a new trial.

The remaining assignments of error relate to alleged errors in the instructions granted to the appellee. Sev-

eral of those instructions, in our opinion, are erroneous and should not have been granted; and in view of the fact that the case is to be tried again it is necessary that we comment briefly on each of those instructions.

It is first argued that the court erred in granting to the appellees three instructions which appear on pages 23 and 24 of the record.

In the first of the three instructions complained of the court instructed the jury that the rider of a bicycle or other vehicle over and along the public highways of the state "shall not turn from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal," and that "the signal for a left turn shall be given by extending the hand and arm horizontally." In the second instruction complained of the court instructed the jury that "even though Clifton Ted Moak was a child 9 years of age when he under took to ride his bicycle over and along the public highways of the State of Mississippi, he was governed by the laws of the State of Mississippi and was required to ride and to operate it in keeping with and according to the law governing the operation of vehicles on the highways; that the law governing the operation of motor vehicles and automobiles and the law governing the operation of bicycles on the highways is the same."

The third instruction complained of is as follows:

"The court instructs the jury for the defendant that under the law of the State of Mississippi a person riding a bicycle on the highways is prohibited from turning from a direct course unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal in the manner required by law, which is that a signal of an intention to turn left shall be given continuously for a reasonable distance before turning by extending the

hand and arm horizontally. The court further instructs you that under the undisputed evidence in this case Clifton Ted Moak was violating said law, and, if you believe from the evidence that such violation of the law on the part of the minor was the sole proximate cause of the accident, then it is your sworn duty to return a verdict for the defendant.''

It is argued that the instructions are erroneous in that they impose upon Ted Moak, a 9-year old child, the same standard of care expected of adults under similar circumstances, although there is no proof in the record to show that Ted Moak possessed the faculty of judgment in such degree as would remove him from the class of infants presumptively held incapable of exercising discretion.

In answer to the criticism made of the instructions, the appellee's attorneys say that the question of the child's contributory negligence is not mentioned in the instructions, and that the instructions are practically identical with instructions approved by this Court in Cochran et al. v. Peeler et al., 209 Miss. 394, 47 So. 2d 806, and Murchison v. Sykes (Miss.), 78 So. 2d 888.

■■ ■ We think there was no error in the action of the trial judge in granting the first of the three instructions mentioned above, which merely states the statutory rule relating to the making of left turns by operators of motor vehicles on the public highways. ■■ ■ But the court erred in granting the two remaining instructions. It is true that instructions similar to the two remaining instructions were approved by the Court in the Cochran case, supra, and one instruction somewhat similar to the first of the two remaining instructions was approved by the court in the Murchison case, supra. But the facts disclosed by the record in each of those cases were entirely different from the facts disclosed by the record in this case. In the Cochran case the appellant was a minor more than 14 years of age at the time of his in-

jury, and, as pointed out in the opinion in that case, a person 14 years of age is presumed to be capable of committing a crime, and is therefore presumably capable of being guilty of negligence. In the Murchison case, supra, the testimony showed that there was a brick wall about 6 or 6½ feet high which prevented the taxi driver from seeing the boy on the bicycle coming into the intersection until he was in close proximity to him, and the jury was warranted in believing that the taxi driver did all that he could do to avoid the accident after he first saw the boy pedaling his bicycle into the intersection.

The instruction in the Murchison case referred to above may have been a proper instruction under the facts in that case, where the proof showed that the taxi driver did all that he could do to avoid the accident after he saw the boy pedaling his bicycle into the intersection. But it does not necessarily follow that the same instruction should have been given in this case where the appellee's own testimony showed that he did not do all that he could have done or should have done to guard against such accident after he saw the boy pedaling his bicycle along the highway.

 It is error for the court in any case to grant instructions which are likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence; and the two instructions referred to above, which must be read and considered together, are instructions of that kind.

The appellee in this case did not present to the jury a state of facts which, if found to be true, would completely exonerate him by showing that he was not at fault, and that Ted Moak's injury and death were due solely to his own negligence; and yet the jury was told in the last of the two above mentioned instructions that they might so find.

 The rule is well settled by the decisions of this Court that a minor child between the ages of 7 and 14

years is prima facie presumed not to be possessed of sufficient discretion to make him guilty of contributory negligence in failing to exercise due care for his own safety. See Johnson v. Howell, 213 Miss. 195, 56 So. 2d 491; Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461; and cases cited.

There is no proof in the record that we have here to show that Ted Moak was a child of exceptional capacity for his age or that he was possessed of the faculty of judgment in such degree as removed him from the class of infants presumptively held incapable of exercising discretion. Yet the jury was told in effect in the two instructions last above mentioned that the 9-year old boy was violating the law at the time he met his untimely death, and that if the jury believed from the evidence that the boy's failure to observe the requirements of the statute was the sole proximate cause of the accident, they should return a verdict for the appellee. After reading the instructions the jury may have reasonably concluded that, even though the appellee had seen the boy on the bicycle when he was several hundred feet in front of him, and had failed to sound his horn, or apply his brakes, until it was too late to avoid hitting the boy whose back was turned to the approaching car, they might disregard those facts and treat the unexpected and sudden action of the child in making a left turn on the bicycle as the sole proximate cause of the accident. The two instructions, as applied to the facts in this case, cannot be reconciled with the rule laid down by this Court in Avery v. Collins, supra, and in McMinn et al. v. Lilly, supra, that "a motorist when passing children who are playing or riding on the streets or highways is required to use proper care in giving the necessary signals, in bringing his car under control, and in anticipating the unusual and impulsive actions characteristic of persons of immature years."

It is next argued that the court erred in granting an instruction which appears on page 25 of the record, in which the court instructed the jury that they might find for the defendant, if they believed from the evidence that Ted Moak "suddenly and without giving any signal according to law of his intention to do so, turned his bicycle from a direct course and drove into the right front of the automobile being driven by the said John M. Black, thus creating an emergency, through no negligence on the part of the said John M. Black * * *."

We think that the court erred in granting that instruction. There is no room for the "sudden emergency" doctrine in this case. The appellee was confronted with the danger of injury to the 9-year old boy when he first saw him peddling his bicycle along the highway in front of him; and the appellee had ample time after he saw the boy to sound his horn and bring his car under proper control so as to avoid injuring the boy. In this case as in Avery v. Collins, supra, "no case of sudden emergency is presented by the facts."

Finally, it is argued that the court erred in granting to the appelle an instruction, which appears on pages 25 and 26 of the record, in which the court instructed the jury that if they believed from the evidence that "Clifton Moak was aware of the approach of John Black's automobile or that the actions of Clifton Moak while riding on his bicycle on said highway were such that reasonably led John Black to believe in good faith that Clifton Moak had notice and was fully aware of the approach of defendant's automobile and that as Black's automobile approached the said Clifton Moak was operating his bicycle in a careful, competent manner, then it was not necessary and John Black was under no legal duty to sound his horn and continue sounding his horn at short and frequent intervals when approaching Clifton Moak; * * *."

██ ██ We think that the court erred in granting that instruction. There is no testimony in the record to warrant a finding that Ted Moak was aware of the approach of the automobile prior to the time the appellee sounded his horn when he was only 12 or 15 feet from the child. It is true that the appellee stated that he "was sure" that the child knew of his approach. But that statement was a mere statement of opinion, as the testimony shows. The appellee was asked by his own attorney, as we have already stated, why he started bearing to his left, and his answer was, "In order to give the boy on the bicycle ample room, and the closer to him I got the farther over to my left I got, and at one time, I don't know the distance, he turned his head slightly, it looked like to see if any body was coming and I figured he knew my presence, he could hear the traction of the car and the sound of the motor." The appellee was asked on cross-examination why he did not blow his horn back up the highway, and his answer was: "I was sure the boy knew I was approaching, it was a slow grating noise of the motor and the tires on the pavement and there was nothing else visible, I was sure that he heard me coming." The fact that the child "turned his head slightly" and the appellee "figured" he knew of the appellee's presence, or that the appellee "was sure" that the child knew of his approach, did not relieve the appellee of the duty to sound his horn when he was far enough away to make the warning effective, and reduce his speed and apply his brakes, if necessary, to avoid injury to the child. The appellee had no right to assume that the 9-year old boy would hear the sound of the motor of the automobile and would keep out of the way of the oncoming vehicle. The appellee had no right to assume that the boy, who had his back turned to the automobile, knew that he was about to pass him.

For the reasons stated above the judgment of the lower court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.