Clint R. HUBBARD, by and through his mother and next friend, Marilyn J. Williams, and Marilyn J. Williams, Plaintiffs-Respondents,

v.

James O. LATHROP and Margaret E. Martin, Co-Executors of the Estate and Personal Representatives of Clyde Lathrop, Deceased,[1] Defendants-Appellants.

No. KCD 27873.

Missouri Court of Appeals, Kansas City District.

Nov. 29, 1976.

Motion for Rehearing and/or Transfer Denied Dec. 23, 1976.

Application to Transfer Denied Feb. 14, 1977.

1. Mr. Lathrop died September 14, 1974, during pendency of this case.

Walter R. Simpson, Kansas City, for defendants-appellants; Sheridan, Sanders, Mason & Simpson, P. C., Kansas City, of counsel.

James W. Benjamin, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for plaintiffs-respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from order granting new trial to plaintiffs on ground the verdict was against the weight of the evidence. The question is whether plaintiffs made a submissible case and, if so, whether plaintiff Clint Hubbard was contributorily negligent as a matter of law. Affirmed.

Appellants contend there was no evidence to support submission of plaintiffs' case and that, regardless of the theory of negligence advanced, the proximate cause of the casualty was the contributory negligence of plaintiff Clint Hubbard in that he made a sudden turn into the path of the automobile operated by Clyde Lathrop.

The grant of one new trial on the ground the verdict was against the evidence will not be disturbed when there is evidence to support a verdict for the party to whom the new trial is granted; and the inquiry accepts the evidence favorable to the trial court's ruling and rejects the appellant's evidence unless it supports the court's ruling. *Clark v. Quality Dairy Co.,* 400 S.W.2d 78, 82[1] (Mo.1966); *Land Clear. for Redev. Auth. v. Joplin Union Depot Co.,* 429 S.W.2d 806, 809–810 (Mo.App.1968); *Overbey v. Fodde,* 420 S.W.2d 510, 511 (Mo.1967). See also *Allman v. Yoder,* 325 S.W.2d 472, 473[2] (Mo.1959), citing e. g., *Burr v. Singh,*

362 Mo. 692, 243 S.W.2d 295, 300[9] (Mo. 1951), and *Chappell v. City of Springfield,* 388 S.W.2d 886, 889[2] (Mo.1965), citing e. g., *Andres v. Brown,* 300 S.W.2d 800, 801[2] (Mo.1957).

The casualty occurred November 23, 1972, on Missouri Highway 116 east of Plattsburg. The day was sunny and clear. The highway was a straight, two-lane, dry asphalt surface, 24 feet wide, running downgrade west to east. The casualty site was an open area with no obstructions to visibility and no restrictions on eastbound traffic against passing. The speed limit was 65 miles per hour.

Clint Hubbard was 15 years of age. He had ridden bicycles since he was three or four years old, and had studied literature on bicycle safety. He was athletic and a good student. He left his home in Lathrop to visit his aunt in Plattsburg around 3:00 p. m. His last recollection of events which occurred later that day was driving down the highway in the middle of the right-hand lane (eastbound toward Lathrop from Plattsburg).

Clyde Lathrop (by deposition) was 78 years of age. He had been to St. Joseph and was returning eastbound on highway 116 toward his home in Richmond. As he came over a hill to the west of the casualty scene, he saw Clint Hubbard riding his bicycle on the right-hand side of the highway. Mr. Lathrop was driving about 60 miles per hour; there were no other vehicles in sight. The investigating officer, Trooper Dean Jefferson, found skid marks near the casualty scene leading to Mr. Lathrop's automobile and measured the distance from such marks westward to the top of the hill at approximately 729 feet. Mr. Lathrop continued down the highway. When he was two or three car lengths behind the bicyclist, having slowed to 50 to 60 miles per hour by his estimate or to 50 to 55 miles per hour by the trooper's estimate, he started to pass, and then honked his horn "shortly after" he "pulled over" to pass. After Mr. Lathrop honked his horn, the boy "looked back, looked around this way [indicating] and looked back and saw me over there.

* * * And he still pulled right over in front of me. I jerked the car off the highway in trying to miss him. * * * In fact, I think if I hadn't honked the horn the boy would have been all right. I think that's what startled him. I don't think he heard that car at all, and when I honked the horn, I think he just—well, went all to pieces. It scared him to death. He thought the car was behind him, I guess. If I hadn't honked the horn, I don't think the boy would have pulled over there."

Trooper Jefferson determined that the casualty occurred around 3:55 p. m. When he arrived at the scene, he observed Mr. Lathrop's 1972 Buick sedan in the ditch on the north side of the highway with its front end headed southward up the highway embankment. The bicycle was lying on the shoulder near where the car went over the embankment; its rider had been taken from the scene by ambulance. The Buick displayed damage to its right front side, and the windshield had been shattered when the bicyclist was thrown "up over the hood and into the windshield," as described by Mr. Lathrop. The bicycle displayed damage to both wheels and the left handlebar.

There is no question that Clint Hubbard sustained injuries as a result of the casualty; that his injuries required extensive medical care; and that he is limited in his physical capacity.

The jury rendered its verdict for defendants January 22, 1975. On January 31, 1975, Mrs. Williams wrote to Judge Connett, "as a mother," and espoused her hypothesis of liability and injury as an "appeal * * * to help us by giving us another trial." On February 3, 1975, Judge Connett answered Mrs. Williams and advised her that he felt the case had been fairly tried and that she should consult her attorney, Mr. Benjamin, to determine whether "he can think of any grounds at all for you to obtain another trial * * *." Copies of Judge Connett's and Mrs. Williams' letters were furnished to counsel. A copy of Judge Connett's letter was filed in the case February 5, 1975. Plaintiffs' motion for new trial

having been forwarded to the clerk and the judge February 3, 1975, was also filed by the clerk February 5, 1975. The first ground in plaintiffs' motion for new trial was that "the verdict is against the weight of the evidence." On February 18, 1975, counsel for defendants acknowledged receipt of Judge Connett's answer to Mrs. Williams, together with a copy of her letter to Judge Connett. Counsel also acceded to a ruling on the motion for new trial without oral argument or written suggestions.

On February 25, 1975, the court entered the following order:

"On Plaintiff's Motion for a New Trial, having been submitted to the Court without argument, and having been fully considered, the Court finds that the verdict of the jury is against the weight of the evidence:

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED by the Court that Plaintiff's Motion for New Trial be and is hereby sustained."

The foregoing order was accompanied by a memorandum of the court's observations with respect to the submissibility of both defendants' negligence and plaintiff Clint Hubbard's contributory negligence.

Section 304.016.1(1), RSMo 1969, provides: "An operator or driver [of a motor vehicle] overtaking and desiring to pass a vehicle shall sound horn before starting to pass except * * *." Such provision accords with the general rule as stated, 8 Am. Jur.2d, Automobiles and Highway Traffic, Section 780, page 339:

"Before a motorist attempts to pass another motorist proceeding in the same direction, he must make known to the motorist ahead his presence and desire to pass, where a statute so requires, or when circumstances require a warning in the exercise of reasonable care. When such a signal or warning is required, it must be timely * * *."

See also 60A C.J.S. Motor Vehicles § 326(3), Signaling to Overtaken Vehicle: "The required signal or warning must be timely," p. 348.

"To be effective, * * * an audible signal of an intention to pass a forward vehicle must be given in such a manner and at such a time as to permit meaningful action by the forward driver in response to the signal. * * * an overtaking motorist may be regarded as negligent, or contributorily negligent, in connection with a collision with a forward car in passing, even though the overtaking driver gave an audible signal, if the signal was not given in time to permit effective evasive action by the forward driver." 22 A.L.R.3rd 325, 366.

In application of the foregoing, it has been said that the statute does not declare the exact distance or time before overtaking at which the audible signal must be given. It "is intended for the benefit of the driver of the overtaken vehicle. * * Its purpose is to warn him that another vehicle is approaching and is about to pass him, and it ought to be given in time to enable him to safeguard himself against the danger of collision. The proper time for such warning is ordinarily a question of fact for the jury." *Moore v. Miller,* 51 Cal.App.2d 674, 125 P.2d 576, 579[6, 7] (1942). The warning signal must be given to the operator of the vehicle in front "in reasonable time to avoid injury which would probably result from a left turn or a crossing over the center of the highway to the left by the vehicle in front." *Boykin v. Bissette,* 260 N.C. 295, 132 S.E.2d 616, 619 (1963). In *Moak v. Black,* 230 Miss. 337, 92 So.2d 845 (1957), a new trial was accorded to the survivors of a 9-year-old bicyclist killed when struck by a motorist who saw the boy for a distance of several hundred feet before overtaking him on a straight roadway with unobstructed view and neither sounded his horn nor applied his brakes until within 12 or 15 feet of the boy. The motorist "had ample time after he saw the boy on the highway to sound his horn and reduce his speed and apply his brakes, if necessary, before attempting to pass the boy on the bicycle. * * * [he] had no right to assume that the boy knew that the automobile was approaching, merely because 'he turned his head * * *.'" 92

So.2d 1. c. 850. See also *McMinn v. Lilly,* 215 Miss. 193, 60 So.2d 603 (1952); 172 A.L.R. 736, 737, 738.

 Under the version of the facts favorable to plaintiffs, defendants' decedent saw plaintiff Clint Hubbard on a bicycle some 700 feet ahead and continued to travel at 50 to 60 miles per hour until he was within but two to three car lengths of the boy, at which point he turned to the left for the purpose of passing, thereafter honked his horn, and thereby startled the boy into pulling left. As demonstrated, the statute required that Mr. Lathrop timely sound a warning before he started to pass the boy. In failing to do so, he could be found negligent; and the test whether such negligence was a proximate cause of the result is whether the facts show "that the injury would not have occurred in the absence of the negligent act." *Dixon v. Wabash R. Co.,* 198 S.W.2d 395, 398 (Mo.App.1946). As directed in a similar case of collision between overtaking and overtaken vehicles, "It is not for this court to say that had a proper and timely warning been given by [the overtaking driver] he would not have influenced the situation of danger in any way." *Dintelman v. McHalffey,* 435 S.W.2d 633, 637 (Mo.1968).

 A bicyclist also has the duty to obey the rules of the road and is required to exercise ordinary care for his own safety. *Burt v. Becker,* 497 S.W.2d 411 (Mo.1973); however, the facts in this case do not convict Clint Hubbard of contributory negligence as a matter of law.

In *Hunt v. Los Angeles Ry. Corp.,* 110 Cal.App. 456, 294 P. 745 (1930), the bicyclist was warned of the overtaking bus by a girl standing nearby on the sidewalk. He thereupon turned his body and head to the left and looked in the direction of the bus and at the same time swerved his bicycle to the left sufficiently to be struck by the bus. Other witnesses observed that the bicyclist appeared frightened upon discovering the proximity of the bus. The driver sounded his horn before the collision but how long before he was unable to say. Contributory negligence was invoked as a defense. A directed verdict for defendant was reversed with the following observations:

"Bicycle riders have the same right as automobile drivers to the use of the streets, and the former are chargeable only with such ordinary care for their own safety as a prudent person of like age, intelligence, and experience would exercise under the same or similar circumstances. * * *

"Conduct which might otherwise constitute negligence on the part of a child may not be so considered where its acts or omissions were done or omitted in an emergency calculated to produce fright, bewilderment, or confusion * * *; and, while a driver in approaching a child upon a street or highway is not bound to guard against every possible contingency, nevertheless, where he sees a child in a place of danger, or might reasonably apprehend that if approached without warning the child would through fright or bewilderment place itself in a place of danger, it is his duty to keep his car under such control as would be *reasonably necessary to avoid a collision* * * *. As has been held with respect to the conduct of adults under similar circumstances, if the negligence of the defendant caused fear and loss of presence of mind on the part of the injured person so as to impel him to rush into danger, his mere error or mistake of judgment does not necessarily constitute contributory negligence as a matter of law." 294 P. 1. c. 747.

A similar observation was made in *Southwestern Freight Lines v. Floyd,* 58 Ariz. 249, 119 P.2d 120, 124 (1941):

"That the operator of the bicycle, when she saw or heard the Northcutt truck 15 or 20 feet behind her, should be reasonably expected to continue on her course, unexcited, and take the chance she would not be run down, is hardly in accordance with human experience. One would rather expect her to become panicky and instantly seek some way of escape. That she failed to adopt a safe or the safest course, or to give statutory signals * * * does not relieve the defendant. It has long been settled that a party having given another reasona-

ble cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility for damages."

Appellants contend also that although the court's order showed plaintiffs were accorded a new trial on the ground the verdict was against the weight of the evidence, "a fair reading of the trial court's memorandum * * * makes clear that the court, in essence, granted a new trial because the court concluded that Clyde Lathrop was negligent as a matter of law and that Clint Hubbard was free of negligence as a matter of law." Appellants assert that " * * * evidence * * * that the trial court granted a new trial on some basis other than the verdict being against the weight of the evidence is the court's letter to Marilyn Williams * * * written in response to Mrs. Williams' impassioned letter * * *. It is obvious that Mrs. Williams' letter had a significant effect on the court because the Court's Memorandum * * * for the most part paraphrases the fourth paragraph of Mrs. Williams' letter."

This ground was advanced for reversal and denied in *Sawyer v. Winterholder,* 195 S.W.2d 659 (Mo.1946). That case also involved a plaintiff bicyclist struck by defendant's automobile; and after a verdict for defendant, the trial court ordered a new trial on ground the verdict was against the weight of the evidence. The trial court also accompanied its order with a memorandum on its ruling, and the defendant-appellant argued that the record showed that the court granted the new trial to plaintiff upon an erroneous assumption or opinion contrary to the order itself. Apropos this case, the court observed:

"The appellant-defendant, being fully aware of the force and effect of the trial court's order setting the jury's verdict aside as against the weight of the evidence, * * seizes upon the trial court's memorandum and ingeniously contends that the court did not sustain the motion upon the assignment that the verdict was against the weight of the evidence but in fact sustained the motion upon the erroneous assumption that the defendant's evidence was contrary to the physical facts and, therefore, unbelievable. * * *

"But, the insuperable difficulty with the appellant's basic argument * * * is that the trial court's order, which is the sole and only official repository for the court's thoughts or reasons * * * for sustaining a motion for a new trial, in unambiguous language states that the motion was sustained upon the ground that 'the verdict is against the greater weight of the evidence.' * * * The court, in sustaining a motion for a new trial, is required by the statute * * * to specify in the order the 'ground or grounds' upon which the motion is sustained * * * but the court is not required to further set forth in a separate memorandum or elsewhere the reasons for the grounds, the process by which the court arrived at the grounds or the facts upon which the court bases the grounds. * * * The court's * * * statement of the background of its views, set forth at the time the order is made— while they may be helpful and useful—do not have the effect of making the statement a part of the order or of changing the meaning or effect of the order. * * * Even though the court may have orally given incorrect or erroneous reasons for the grounds of his order * * *, nevertheless his ultimate decision, embodied in the required order, controls and by it the motion was in fact sustained on the discretionary ground that the verdict was against the weight of the evidence." 195 S.W.2d l. c. 661. To the same effect, see *Land Clear. for Redev. Auth. v. Joplin Union Depot Co.,* supra, 429 S.W.2d l. c. 808–809[1–4]; and cf., *Lifritz v. Sears, Roebuck and Company,* 472 S.W.2d 28 (Mo.App.1971), where the trial court's order incorporated findings going beyond the discretionary ground that the verdict was against the weight of the evidence, and therefore did not limit itself to the discretionary ground.

Judgment affirmed.

All concur.